CORRECTED: AUGUST 26, 2008
MODIFIED: JUNE 13, 2008

# Supreme Court of Kentucky

## 2005-SC-000749-MR

DATE 6-19-08 SIA Gravitt, D.C.

ROBERT (BOB) TERRY                                                    APPELLANT

V.
ON APPEAL FROM OWSLEY CIRCUIT COURT
HONORABLE DENNIS JEFFREY CHOATE, JUDGE
NO. 04-CR-00036-001

COMMONWEALTH OF KENTUCKY                                              APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING IN PART

### AND VACATING AND REMANDING IN PART

A jury convicted Robert Terry of two counts of criminal mischief in the first degree, one count of desecration of venerated objects, one count of violating a grave, one count of theft by unlawful taking over $300, and one count of abuse of a corpse. The jury recommended that Terry be sentenced to five years on each criminal mischief count, eight years for the desecration of venerated objects conviction, five years on the violating a grave charge, five years for the theft by unlawful taking charge, and twelve months for the abuse of a corpse charge. At sentencing, Terry's aggregate sentence for all offenses was set at the statutory maximum of twenty years' imprisonment.[1] Terry then filed this appeal as a matter of right.[2]

---

[1] See Kentucky Revised Statutes (KRS) 532.110(1)(c); KRS 532.080(6)(b).

[2] See KY. CONST. § 110(2)(b).

Terry argues that (1) some of his convictions violate the prohibition against double jeopardy, (2) his convictions must be reversed because he was not arraigned on the charges contained in a superseding indictment, and (3) the trial court erred when it orally held a fine in abeyance for future levy. We reject Terry's double jeopardy arguments. But we vacate and remand Terry's criminal mischief convictions because he was never arraigned on those charges before trial. We reject as moot Terry's argument regarding the allegedly improper imposition of a fine because the written judgment of conviction does not reflect the imposition of a fine.

## I. FACTUAL AND PROCEDURAL HISTORY.

While driving through the cemetery looking for truants, the Booneville, Kentucky, Chief of Police noticed a casket lying outside a mausoleum. Upon inspection, the chief discovered that the casket had been pried open; and the remains of Peggy Cornett had been disturbed. Several items of jewelry had been removed from Cornett's remains. One of the hands had been severed from the corpse, and a finger from the other hand was missing.

Terry was quickly identified as a suspect. Two people told the authorities that before the disturbance of the remains, Terry had offered to sell them jewelry that he intended to take from a grave. Furthermore, the authorities recovered from a pawnshop a necklace that had been interred with Cornett's body. Terry's name was on the pawn ticket, and the pawnshop's surveillance video showed Terry pawning Cornett's necklace. A search of Terry's home yielded additional items taken from Cornett's tomb.

Two months later, Terry, along with his girlfriend and others, was indicted for complicity in the desecration of venerated objects, complicity in violating a grave,

2

complicity in theft by unlawful taking over $300, and complicity in abuse of a corpse. Objections raised by the Cornett family over the handling of the case led to the appointment of a special judge and special prosecutor.

After the indictment had been pending for almost fifteen months, a grand jury returned a superseding indictment against Terry. That indictment charged Terry alone with committing two counts of criminal mischief, one count of violating a grave, one count of first-degree desecration of venerated objects, one count of theft by unlawful taking over $300, and one count of abuse of a corpse. Approximately two weeks later, the Commonwealth moved to amend the superseding indictment, reciting that the amendments were necessary "only to correct scrivener[']s errors." That motion also stated that "[t]he Commonwealth further moves that the defendant be arraigned, or arraignment waived, on the morning of trial, or in the alternative[,] at the Court's pleasure."

About a week later, Terry filed a written motion to continue the trial because of the superseding indictment, specifically noting that he "has not been arraigned on either of these Counts [of criminal mischief] and the arraignment is scheduled for August 29, 2005[,] and his trial to follow thereafter." Nevertheless, Terry's trial commenced as scheduled on August 29, 2005.

At the beginning of the trial, Terry's counsel orally moved for a continuance, noting that Terry had not been arraigned on the charges contained in the superseding indictment and that Terry had not received in discovery the tapes of the proceedings of the grand jury that returned the superseding indictment. The trial court denied Terry's motion, finding that "there is no new evidence, no new information that is going to be

3

gathered, that this is the same transaction or occurrence that Mr. Terry was previously charged with."

A jury trial then began. The jury found Terry guilty of all of the charges contained in the superseding indictment. Terry was sentenced in the manner noted above, and this appeal followed.

## II. ANALYSIS.

### A. Double Jeopardy.

#### 1. General Double Jeopardy Principles.

Section 13 of the Kentucky Constitution provides that "[n]o person shall, for the same offense, be twice put in jeopardy of his life or limb . . . ."[3] The prohibition contained in Section 13 is referred to as the double jeopardy clause. Terry raises several related arguments centering on his contention that many of his convictions violate the prohibition against double jeopardy.

Terry did not make any double jeopardy arguments before the trial court. But under our longstanding rule, double jeopardy questions may be reviewed on appeal, even if they were not presented to the trial court.[4] Because we do not want to let stand a conviction possibly tainted by double jeopardy,[5] we decline the Commonwealth's invitation to revisit our established precedent on this point.

---

[3] *See also* U.S. CONST. AMEND. V.

[4] *See, e.g.,* Beaty v. Commonwealth, 125 S.W.3d 196, 210 (Ky. 2003).

[5] Sherley v. Commonwealth, 558 S.W.2d 615, 618 (Ky. 1977) ("Sherley did not present this issue of double jeopardy or multiple prosecution to the trial court. However, we are persuaded that failure to preserve this issue for appellate review should not result in permitting a double jeopardy conviction to stand.").

In the seminal double jeopardy case of Blockburger v. United States, the United States Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[6] Kentucky uses the Blockburger double jeopardy test.[7] So it is necessary to scrutinize closely and compare the offenses for which Terry was convicted to determine if those convictions violate double jeopardy.

### 2. First-Degree Criminal Mischief and Violating Graves.

A person commits the offense of first-degree criminal mischief "when, having no right to do so or any reasonable ground to believe that he has such right, he intentionally or wantonly defaces, destroys or damages any property causing pecuniary loss of $1,000 or more."[8] By contrast, a person commits the offense of violating a grave when he intentionally "[m]utilates the graves, monuments, fences, shrubbery, ornaments, grounds, or buildings in or enclosing any cemetery or place of sepulture . . . ."[9] Thus, the elements of the two offenses are as follows:

First-degree criminal mischief:

a) having no right to do so (or having no reasonable ground to believe he has a right to do so) a person

---

[6] 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

[7] Commonwealth v. Burge, 947 S.W.2d 805, 811 (Ky. 1996) ("Thus, we return to the Blockburger analysis. We are to determine whether the act or transaction complained of constitutes a violation of two distinct statutes and, if it does, if each statute requires proof of a fact the other does not. Put differently, is one offense included within another?") (internal citation omitted).

[8] KRS 512.020(1).

[9] KRS 525.115(1)(a). Of course, conduct occurring during routine care and maintenance of a cemetery is exempt from prosecution by virtue of KRS 525.115(2).

5

b)     intentionally or wantonly

c)     defaced, destroyed, or damaged any property,

d)     thereby causing loss of $1,000 or more.

<u>Violating graves</u>:

a)     a person intentionally

b)     mutilated

c)     the grave, monument, fence, shrubbery, ornaments, grounds or buildings in or enclosing any cemetery or place of sepulture.

Obviously, first-degree criminal mischief and violating a grave do bear some similar characteristics. For example, each requires intentional (or, for criminal mischief, wanton) destruction or mutilation of property. For criminal mischief, destruction or damage to any type of property will suffice. The violating a grave statute requires the mutilated property to be a grave or the ornaments or grounds surrounding a grave. So the requirement for property damage in the violating a grave statute is, at its core, merely a more specific type of property damage than the general property damage requirement contained in the criminal mischief statute.

But that is not the end of the inquiry because there is, in fact, a key distinction between the two offenses. Namely, the criminal mischief statute requires the property damage to be at least $1,000. That monetary damage threshold is a distinct element which, for double jeopardy purposes, separates the criminal mischief offense from the violating a grave offense.[10]

---

[10]   *See, e.g.,* <u>State v. Timothy K.</u>, 27 P.3d 1263 (Wash.Ct.App. 2001) (holding that defendant's convictions for malicious mischief in the second degree and malicious harassment did not violate double jeopardy because "[i]n this case, both the malicious harassment offense and the second degree malicious mischief offense require proof of an element not found in the other offense. Malicious harassment requires proof that the act was committed because of

The $1,000 minimum property damage requirement must be considered an actual element of the offense of first-degree criminal mischief because, in order to avoid a directed verdict on that charge, the Commonwealth must show that a defendant, such as Terry, caused at least $1,000 in property damage. If the lack of proof on any aspect of an offense would lead to a directed verdict of acquittal, that aspect must be considered an element of the offense for double jeopardy purposes. No such monetary damage requirement was necessary in order for the Commonwealth to avoid a directed verdict on the violating a grave charge. So the criminal mischief offense clearly contains a separate additional element from the violating a grave offense, which means that Terry's convictions for violating a grave and first-degree criminal mischief did not violate double jeopardy.[11]

---

actor's perception of the victim's sexual orientation, whereas second degree malicious mischief requires proof that the act resulted in damage to property in excess of $250. Timothy contends in a footnote contained in his brief that the $250 damage requirement found in the second degree malicious mischief offense is something short of an element because it 'is unrelated to the guilt of a defendant and is simply [a legislative] distinction for determining the degree of malicious mischief in  particular case.' This contention does not survive scrutiny. The sum of the damage caused is precisely what determines the degree of the offense, and for that reason is a true element that must be proved beyond a reasonable doubt.") (footnote omitted); United States v. Pérez-González, 445 F.3d 39, 45 (1st Cir. 2006) ("Pérez-González asserts that the legislative intent with regard to the joint application of the two statutes is ambiguous and proceeds to a Blockburger analysis. We accept arguendo that Blockburger applies, but a review of the relevant statutes dooms his argument. While both provisions clearly pertain to the damaging of government property, Section 844(f) includes the additional element of the use of fire or explosives and Section 1361 includes the additional element of a minimum monetary damage amount (to be charged as a felony), distinctions that Pérez-Gonz[á]lez's counsel conceded at oral argument. The offenses are distinct under Blockburger." (footnotes omitted) (emphasis added).

[11] Although the precise issue is not before us, Terry's double jeopardy argument might have been valid if he had been charged with third-degree criminal mischief (KRS 512.040) since that offense does not require the Commonwealth to prove that a defendant committed a threshold monetary amount of property damage. See Timothy K., 27 P.3d at 1265 n.5.

### 3. Theft by Unlawful Taking and First-Degree Desecration of Venerated Objects.

A person commits first-degree desecration of venerated objects "when, other than authorized by law, he intentionally excavates or disinters human remains for the purpose of commercial sale or exploitation of the remains themselves or of objects buried contemporaneously with the remains."[12] A person commits theft by unlawful taking when he "[t]akes or exercises control over movable property of another with intent to deprive him thereof . . . ."[13] Theft by unlawful taking is a Class A misdemeanor unless the value of the property in question is $300 or more, in which case the offense is a Class D felony. Terry was convicted of the felony version of the offense.

When the elements of first-degree desecration of venerated objects are compared with the elements of theft by unlawful taking over $300, it becomes clear that Terry's convictions for those offenses did not violate double jeopardy principles. First, theft by unlawful taking over $300 contains a threshold minimum monetary property value for the item(s) taken. By contrast, first-degree desecration of venerated objects contains no such monetary property value requirement.

Additionally, desecration of venerated objects in the first degree is complete upon excavation or disinterment of human remains with the intent to exploit commercially the remains themselves or objects buried with them. There is no requirement that the remains or the objects buried with them actually be taken or destroyed. Theft by unlawful taking, by contrast, requires the perpetrator actually to take control of the purloined objects. Thus, Terry committed the crime of desecration of venerated objects

---

[12] KRS 525.105(1).

[13] KRS 514.030(1)(a).

when he disinterred Cornett's remains with the intent to exploit commercially the jewelry buried with her body. Terry committed the additional crime of theft by unlawful taking over $300 when he took control over the jewelry buried with Cornett's remains. This situation is akin to the offenses of burglary and theft. A burglary is completed when a person unlawfully enters a building with the intent to commit a crime.[14] The burglar is subject to separate prosecution for any additional offenses committed inside the building, such as theft of property located in the building.[15] Thus, because theft by unlawful taking over $300 and first-degree desecration of venerated objects contain separate elements, Terry's conviction for violating both of those statutes does not violate double jeopardy.

Terry's claim that he cannot be convicted of theft by unlawful taking because the items interred with the corpse lost their status as "property" upon interment was not argued before the trial court and is, therefore, unpreserved. And no palpable error on this point occurred under Kentucky Rules of Criminal Procedure (RCr) 10.26. Property is broadly defined in the penal code as "anything of value,"[16] and it is clear that the items taken from the casket had value. We reject Terry's argument that the items interred with a body fall outside the purview of the theft statute because items buried

---

[14]  *See, e.g.,* KRS 511.020(1).

[15]  *See, e.g.,* Phillips v. Commonwealth, 679 S.W.2d 235, 236 (Ky. 1984) ("Phillips contends that, because the intent to commit the theft was an element of burglary, the act of taking the property was culminated when the burglary was culminated. Based upon this reasoning, he argues that his act of receiving stolen property merged with the burglary. We disagree. It is clear that two distinct offenses occurred here. The burglary was completed when Phillips entered the apartment with the intent to commit a crime inside. Even if he had then and there abandoned his activity, he would be guilty of burglary. KRS 511.020-.040. The fact that he stole the television set after he entered the apartment constituted a completely separate offense—theft or receiving stolen property.").

[16]  KRS 514.010(6).

with a person's remains constitute "abandoned property." Tellingly, Terry has not cited any authority so holding, nor are we aware of any.

### 4. Dual Counts of Criminal Mischief.

The superseding indictment charged Terry with one count of first-degree criminal mischief for the damage he inflicted upon the mausoleum and a separate count of first-degree criminal mischief for the damage he inflicted upon the casket. Terry contends that he should have been subject to conviction for only one count of criminal mischief because the damage he inflicted to the mausoleum and to the casket was part of the same course of conduct. We disagree.

Testimony at trial showed that the damage to the mausoleum exceeded $1,000 and that the damage to the casket exceeded $1,000. So there is no question that Terry's conduct met the $1,000 threshold as to both the casket and the mausoleum. Rather, the question is whether Terry may be separately punished for damaging the mausoleum and the casket.

Terry's argument centers around KRS 505.020(1)(c), which provides that a defendant may not be convicted of more than one offense that occurred during a single course of conduct if "[t]he offense is designed to prohibit a continuing course of conduct . . . ." We do not find that first-degree criminal mischief is designed to prevent a continuing course of conduct. Rather, the offense of first-degree criminal mischief is completed once the perpetrator, without the authority to do so, "intentionally or wantonly defaces, destroys or damages any property causing pecuniary loss of $1,000 or more."[17] No continuing course of conduct is necessary to commit that offense. Criminal

---

[17]  KRS 512.020(1).

10

mischief is, thus, unlike the most obvious offense involving a continuing course of conduct—nonsupport of a dependent. Each missed support payment could, theoretically, constitute a new offense were it not for the general prohibition of KRS 505.020(1)(c) against multiple punishments for offenses that constitute a continuing course of conduct.[18]

Terry forced open the mausoleum thereby damaging it in excess of $1,000. He removed the casket from the mausoleum. He then pried the casket open, causing over $1,000 in damage to it. So he had a "sufficient period of time" between forcing open the mausoleum and prying open the casket to "reflect on his conduct and formulate intent to commit another act."[19] Indeed, Terry committed two distinct criminal acts of damage: one to the mausoleum and one to the casket. Those separate acts can be separately punished. After all, if we accepted Terry's argument, he would have had little incentive to refrain from damaging the casket once he had already damaged the mausoleum. We reject Terry's argument that he was subject to being convicted of only one count of first-degree criminal mischief.

---

[18] See Commentary to KRS 505.020 ("Subsection (1)(c) provides for the third exception to the general proposition. This exception applies to offenses which seek to proscribe a continuing course of conduct. An example would be the offense of nonsupport of a dependant, which is committed when a parent intentionally fails to provide support for his child when able to so provide. With this type of offense, subsection (c) limits the number of convictions of an offender to one unless it can be shown that: the offender's conduct was interrupted by legal process; or the statute defining the offense designates specific periods of time as separate offenses. This approach places the burden on the legislature to determine the instances in which a continuing course of conduct involves sufficient danger to be treated as multiple offenses.").

[19] Welborn v. Commonwealth, 157 S.W.3d 608, 612 (Ky. 2005) (holding that defendant's conviction for three counts of assault for shooting a state trooper three times did not violate KRS 505.020(1)(c) because "[e]ach shot was preceded by a sufficient period of time in which Welborn could reflect on his conduct and formulate intent to commit another act.").

## 5. Other Double Jeopardy Issues.

Although not specifically argued by Terry, we will briefly address two additional double jeopardy arguments. It could be argued that Terry's convictions for first-degree desecration of venerated objects and his conviction for violating a grave impermissibly violate double jeopardy principles. Likewise, it could be argued that Terry's convictions for first-degree desecration of venerated objects and criminal mischief violate double jeopardy. But we reject those contentions.

In order to violate a grave, one must "mutilate[]" a grave or the shrubbery, grounds, etc., immediately surrounding a grave.[20] By contrast, no mutilation requirement exists in the first-degree desecration of venerated objects statute.

We must give effect to the words chosen by the General Assembly in enacting statues; and if the statute is clear, we are constrained to give effect to the statutes as written.[21] Thus, we must give actual effect to the General Assembly's use of the term "mutilate."

Although the term "mutilate[]" has not been defined by the General Assembly, its dictionary definition is "to cut up or alter radically so as to make imperfect . . . ."[22] In other words, in order to give effect to the General Assembly's decisions (1) to use the term "mutilate[]" in the violating a grave statute, and (2) not to use "mutilate[]" in the desecration of venerated objects statute, the requirement that a grave be mutilated for purposes of the violating a grave statute must be construed not to be identical to the first-degree desecration of venerated object's statutory requirement that human remains

---

[20] KRS 525.115(1)(a).

[21] *See, e.g.,* White v. Check Holders, Inc., 996 S.W.2d 496, 497 (Ky. 1999).

[22] Merriam Webster's Collegiate Dictionary 766 (10th ed. 2002).

12

be "disinterred" or "excavated." Accordingly, committing an act that constitutes desecration of venerated objects does not simultaneously constitute violating a grave.

Another key distinction exists between the desecration of venerated objects offense and the violating a grave offense. In order to commit first-degree desecration of venerated objects, a person must "intentionally excavate[] or disinter[] human remains for the purpose of commercial sale or exploitation of the remains themselves or of objects buried contemporaneously with the remains."[23] Clearly, the desecration of venerated objects offense, unlike violating a grave, contains an additional element in that it requires the actor to have a purpose of commercial gain or exploitation of the contents of a grave.[24] Thus, we reject any contention that double jeopardy bars Terry's convictions for violating a grave and for first-degree desecration of venerated objects.

Also, because there is a $1,000 threshold monetary property damage requirement for criminal mischief in the first degree, but no property damage requirement for desecration of venerated objects, Terry's convictions for desecration of venerated objects in the first degree and criminal mischief in the first degree do not violate double jeopardy.

## B. Failure to Arraign on Superseding Indictment.

Having determined that Terry's convictions do not constitute double jeopardy, we now turn to his contention that his convictions must be reversed because he was not arraigned on the superseding indictment prior to trial. We must agree, in part.

---

[23] KRS 525.105(1).

[24] *See* Robert G. Lawson & William H. Fortune, Kentucky Criminal Law § 16-6(b)(1) (1998) (opining that violating graves "is similar to desecration of venerated objects in the first degree ('grave robbing') but does not require a commercial or other exploitative purpose.").

As previously mentioned, the grand jury returned a superseding indictment issued against Terry about three weeks before his scheduled jury trial. That superseding indictment added two criminal mischief charges, and it also changed Terry's role in the other originally charged offenses from being complicit in the commission of those offenses to being the principal actor in the commission of the offenses.

Under Kentucky law, "an arraignment and taking of a plea are necessary to a valid conviction."[25] Yet, the record does not reflect that Terry was arraigned on the superseding indictment. And Terry clearly apprised the trial court of the fact that he had not been arraigned, which properly preserved this issue for appellate review.

We utterly reject the Commonwealth's disingenuous argument that Terry did not bring the lack of an arraignment on the superseding indictment to the trial court's attention. Terry filed a written pretrial motion for a continuance in which he stated that he had not been arraigned on the superseding indictment. And in his oral motion for a continuance shortly before the trial began, Terry again reminded the trial court that he had not been arraigned on the superseding indictment.

Since we are bound by the record presented to us, we also reject the Commonwealth's baseless speculation that because the trial transcript reflects that a break of indeterminate time occurred between Terry's oral motion for a continuance and the start of voir dire that "it can only be presumed that [Terry] was arraigned out of the presence of the court reporter between the in-chambers hearing and the beginning of *voir dire*."

---

[25] Hutson v. Commonwealth, 171 S.W.3d 743, 745 (Ky.App. 2005).

Terry was convicted of criminal mischief charges of which he had never been formally advised, and to which he had never entered a formal plea of not guilty. A criminal conviction may not be had on a new charge in a superseding indictment to which a defendant has not entered a formal plea, even if the new charges are based on the same essential underlying facts as the original indictment. So Terry's criminal mischief convictions must be vacated. A more difficult question exists as to whether the remainder of Terry's convictions must also be vacated.

There are minor grammatical changes between the original and superseding indictments as to the desecration of venerated objects, violating a grave, theft by unlawful taking, and abuse of a corpse charges. But the most important change is the fact that the original indictment charged Terry and the other named defendants with complicity to having committed those offenses. By contrast, the superseding indictment eliminated the co-defendants and the complicity language from the charges.

Although better practice would be for a defendant to be arraigned on all charges in a superseding indictment, rearraignment is absolutely necessary only if the charges in the superseding indictment are materially different than those in the original indictment.[26] Thus, we must determine if the changes contained in the superseding indictment were material.

---

[26] *See* 21 Am.Jur.2d *Criminal Law* § 592 (2007) ("Whether it is necessary to arraign the accused and give him or her an opportunity to plead after the indictment or information has been amended, usually depends on the materiality of the amendment. If the indictment or information has been materially changed, the accused should not be put on trial without rearraignment.") (footnote omitted).

15

Removing the element of complicity from the charges against Terry did not mean that Terry was suddenly charged with a wholly new set of offenses.[27] Consistent with that reasoning, we have recently held that allowing the Commonwealth to amend an indictment during trial to add complicity language to a charge did not prejudice a defendant's substantial rights.[28] By the same token, Terry's substantial rights must not have been prejudiced by the removal of complicity language in the superseding indictment. Terry was, by virtue of the original indictment, well aware of the pertinent underlying facts relied upon by the Commonwealth.[29] In short, Terry has not specifically shown any prejudice that he suffered as a result of his not being arraigned on the charges that were amended by the superseding indictment.

Under the particular facts of this case, the lack of a rearraignment on the desecration of venerated objects, violating a grave, theft by unlawful taking, and abuse of a corpse charges does not require reversal since Terry has not shown specific prejudice stemming from the lack of rearraignment on those charges.

---

[27] Commonwealth v. McKenzie, 214 S.W.3d 306, 307 (Ky. 2007) ("amending the indictment to include an allegation that the defendant is guilty of the underlying charge by complicity does not constitute charging an additional or different offense.").

[28] Id. at 307-08. See also Epperson v. Commonwealth, 197 S.W.3d 46, 52 (Ky. 2006) (no unfair surprise where defendant was given adequate notice of the evidence against him but was not given notice by the Commonwealth of the role it believed the defendant played in the crimes).

[29] McKenzie, 214 S.W.3d at 308-09 ("In fact, [a]ppellee was on notice prior to trial that the Commonwealth intended to present testimony alleging that [a]ppellee was, at the very least, an accomplice in the burglary. The Commonwealth did not charge its theory of the case mid-trial . . . and it did not allege any charges that were not substantiated by the evidence. Rather, . . . the Commonwealth fairly informed [appellee] of its intentions and [a]ppellee was free to have developed its strategy accordingly. . . . When these circumstances are considered in their totality, we find that [a]ppellee suffered no unfair surprise and was not misled as a result of the original indictment being amended at the close of the Commonwealth's case in chief to include a charge that the underlying offense was committed by complicity. Accordingly, the Court of Appeals' opinion must be reversed because the substantial rights of [a]ppellee were not prejudiced in this case.") (quotation marks omitted).

C. The Fine.

At the sentencing hearing, the trial court orally stated that a $500 fine stemming from Terry's misdemeanor abuse of a corpse conviction would be "held in abeyance" while Terry was incarcerated. The following colloquy regarding the fine occurred at the sentencing hearing:

> Mr. Smith [for the Commonwealth]: Your Honor, what about the matter of the five hundred dollar ($500) fine[?]
>
> The Court: There is a five hundred dollar ($500) fine. That will be held in abeyance. I don't – if, in fact, there is a way for you to make money while you are in prison, then that can be levied upon it. If not, you'll owe it when you get out.

The final judgment made no mention of a fine. Terry contends that since he was found to be indigent, the trial court's purported delayed imposition of a fine is contrary to, among other matters, KRS 534.040(4).[30]

We note in passing that Terry made no contemporaneous objection to the purported delayed levy of the fine. Regardless, any potential preservation problem is rendered moot by the fact that the judgment of conviction does not impose a fine. Under our precedent, a written judgment takes precedence over any arguably contrary oral statements made by the court.[31] Since the written judgment contains no imposition

---

[30] KRS 534.040(4), which governs fines for misdemeanors, provides that "[f]ines required by this section shall not be imposed upon any person determined by the court to be indigent pursuant to KRS Chapter 31."

[31] Commonwealth v. Taber, 941 S.W.2d 463, 464 (Ky. 1997) ("When there is an inconsistency between oral statements of a court and an order reduced to writing, the latter must prevail."); Commonwealth v. Hicks, 869 S.W.2d 35, 38 (Ky. 1994) ("And where there is an inconsistency between the oral statements of a court and that which is reduced to writing as the court's final judgment, the latter shall prevail and the former shall be disregarded. Such a construction is essential to the operation of the Court of Justice for judges often voice views and opinions which may be inconsistent with their final judgments. If this Court should

17

of a fine, we need not decide whether the trial court's purported oral statement regarding the imposition of a fine to be "held in abeyance" was error.

### III. CONCLUSION.

For the foregoing reasons, Terry's convictions for criminal mischief in the first degree are vacated and remanded to the trial court for proceedings consistent with this opinion. Terry's convictions for desecration of venerated objects in the first degree, violating a grave, theft by unlawful taking over $300, and abuse of a corpse are affirmed.

All sitting, except Noble, J. Abramson, Cunningham, Minton, and Scott, JJ., concur. Lambert, C.J., concurs in part and dissents in part by separate opinion in which Schroder, J., joins.

---

announce a rule whereby the comments of a trial judge could be used to impeach the effect of a court's final judgment, the result would be the destruction of any certainty as to the effect of judgments and a state of chaos in judicial proceedings.").

COUNSEL FOR APPELLANT:

Irvin Halbleib, Jr.
P. O. Box 16175
Louisville, KY 40256


COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General of Kentucky

James C. Shackleford
Assistant Attorney General
Office of Criminal Appeals
1024 Capital Center Drive
Frankfort, KY 40601

# Supreme Court of Kentucky

## 2005-SC-000749-MR

ROBERT (BOB) TERRY                          APPELLANT

V.

      ON APPEAL FROM OWSLEY CIRCUIT COURT
      HONORABLE JEFFREY D. CHOATE, JUDGE
              NO. 04-CR-00036-001

COMMONWEALTH OF KENTUCKY             APPELLEE

### OPINION BY CHIEF JUSTICE LAMBERT DISSENTING IN PART

Appellant, Robert Terry, was convicted of five felony offenses and one misdemeanor offense for breaking into a tomb, disturbing human remains, and stealing objects interred with the remains. On appeal to this Court, he raised several claims of error, including claims of double jeopardy. Because I believe Appellant was convicted of multiple, functionally identical offenses for the same despicable act, I must conclude that some of his convictions violated his right to be free of double jeopardy.

On March 19, 2004, Johnny Logsdon, the Chief of Police of Booneville, drove through a local cemetery looking for truant children. While there, he discovered a casket lying outside of a small mausoleum that had been forced open. Chief Logsdon stopped to investigate, and found that the casket which contained the remains of Peggy Cornett had been opened and her body disturbed. It was determined that several items of jewelry that had been interred with the deceased were missing. One of the deceased's hands and a finger from the other hand were also missing.

The ensuing police investigation quickly led to Appellant as a suspect. Two people who testified at trial told the police that Appellant had approached them about buying some jewelry he intended to take from a grave in the cemetery. The police recovered a necklace that had been entombed with the deceased from a pawnshop in Winchester. Appellant's name was on the pawn ticket, and a security video from the pawn shop showed Appellant completing the transaction. The police obtained a search warrant for Appellant's home where a watch, bracelet, and rings from the tomb were discovered. When the police arrested Appellant, he slipped the wedding band that had been taken from the tomb to his girlfriend, and she hid the ring while she was being questioned by police. The ring was later recovered.

In May 2004, Appellant, his girlfriend, and three others were indicted on four criminal counts: first-degree complicity in the desecration of venerated objects, complicity in violating a grave, complicity in theft by unlawful taking over $300, and complicity in the abuse of a corpse. Remarkably, the foreman of the grand jury that returned the indictments was Ova Cornett, Jr., the son of the deceased woman whose grave had been plundered.[1]

After the indictment, Mr. Cornett continued his involvement in the case. He sent the trial judge multiple letters that were included in the record. In one letter, he chastised the judge for releasing one of the co-defendants for surgery; in another, he asked that Appellant's bond, which had been reduced from $50,000 cash to $20,000 cash, be increased. The trial judge eventually recused himself from the case, and a special judge was assigned to preside.

---

[1] No issue was raised on appeal regarding this fact.

2

Mr. Cornett persisted with his involvement by filing a pro se motion asking for the removal of the prosecutor, alleging lax prosecution. The special judge assigned to the case heard argument from the attorneys about Mr. Cornett's motions. The Commonwealth's attorney decided to disqualify himself, thus rendering moot any discussion of the merits of the motion. However, the judge and attorneys discussed the propriety of the filings themselves, as Mr. Cornett was not a party to the proceeding and appeared to be attempting to practice law without a license. The judge barred Mr. Cornett from filing any further motions and stated that he would refer Mr. Cornett to the state bar for investigation.

The Commonwealth's Attorney in neighboring Madison County, was assigned as the special prosecutor. He obtained a superseding indictment of Appellant. The superseding indictment alleged that Appellant was the actor in the criminal acts, rather than an accomplice, and two new felony charges of first-degree criminal mischief for the damage done to the mausoleum and to the casket were added. Though not relevant to the issues in the case, a subpoena issued prior to trial to Ova Cornett, Sr. (the widower of the deceased) by the special prosecutor was styled, "Commonwealth of Kentucky v. Robert (Bob) (The most inhuman that ever lived) Terry."

Appellant was convicted of all six charges brought against him and punishment was recommended by the jury as follows: five years each on the two criminal mischief counts; eight years for the desecration of venerated objects count; five years for the violating a grave count; five years for the theft count; and twelve months and a $500 fine for the abuse of a corpse count. Appellant was sentenced to a total of twenty years, the maximum allowable sentence since the highest charge was a Class C felony. The court

stated orally that it was holding the fine in abeyance for future levy, though such was not included in the judgment.

## I. Double Jeopardy

Appellant makes multiple claims of double jeopardy violations. The specific double jeopardy question presented by Appellant requires an application of the Blockburger test: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The Blockburger test is codified in Kentucky law at KRS 505.020.

### A. First-Degree Criminal Mischief and Violating Graves

Criminal mischief in the first degree is denounced in KRS 512.020(1): "A person is guilty of criminal mischief in the first degree when, having no right to do so or any reasonable ground to believe that he has such right, he intentionally or wantonly defaces, destroys or damages any property causing pecuniary loss of $1,000 or more." The basic element of the crime, indeed of all degrees of criminal mischief, is intentional or wanton damage to property.[2] The statute makes no distinction among types or kinds of property. First-degree criminal mischief is a Class D felony. KRS 512.020(2).

Violating graves is denounced in KRS 525.115(1) and (2), as follows:

(1) A person is guilty of violating graves when he intentionally:

---

[2] The only difference between the three degrees of criminal mischief is the amount of damage to the property. First degree requires that the property damage equal a "pecuniary loss of $1,000 or more," KRS 512.020; second-degree requires that the property damage equal a "pecuniary loss of $500 or more," KRS 512.030; and third-degree has no pecuniary loss requirement.

4

(a) Mutilates the graves, monuments, fences, shrubbery, ornaments, grounds, or buildings in or enclosing any cemetery or place of sepulture; or

(b) Violates the grave of any person by destroying, removing, or damaging the headstone or footstone, or the tomb over the enclosure protecting any grave; or

(c) Digs into or plows over or removes any ornament, shrubbery, or flower placed upon any grave or lot.

(2) The provisions of subsection (1) of this section shall not apply to ordinary maintenance and care of a cemetery nor the removal and relocation of graves pursuant to procedures authorized by and in accordance with applicable statutes.

This statute is specific in providing punishment for one who intentionally damages or destroys part of a grave, tomb, or cemetery.

These crimes, criminal mischief and violating graves, require the same basic element: intentional damage or destruction of property, but violating graves is specific to places of burial. It applies only where the damage is to certain types of property, namely, that related to burial grounds. Unlike criminal mischief which applies generally and provides for punishment according to pecuniary damage, violating graves is a Class D felony for every such violation without regard to value.

The fact that the two statutes essentially describe the same crime, and in this case, provide for the same punishment is an oddity in double jeopardy jurisprudence.[3] In fact, it could be argued that a person who damages a grave simply does not commit criminal mischief and therefore could not be convicted of that crime. However, we have no doubt of the reason for the violating graves statute. The General Assembly believed that places of burial should be given specific protection and that the crime should be a felony without regard to pecuniary loss. From the statutory scheme I do not believe the

---

[3] See Rutledge v. United States, 517 U.S. 292, 297, 116 S.Ct. 1241, 1245, 134 L.Ed.2d 419 (1996) ("[T]wo different statutes define the 'same offense,' typically because one is a lesser included offense of the other.").

5

General Assembly intended to punish the same act twice, and therefore must conclude that the more general conviction of criminal mischief must give way to the more specific. The U.S. Court of Appeals for the First Circuit has recognized that Blockburger is not all-encompassing; that it represents a default rule of law where legislative intent is not otherwise clear.[4] In this case enactment of the violating graves statute manifests legislative intent with respect to punishment of the act. As Appellant was convicted of violating a grave, he cannot also be convicted of first-degree criminal mischief for damage to the mausoleum and of first-degree criminal mischief for damage to the casket.

## B. Violating Graves and First-Degree Desecration of Venerated Objects

Our previous determination, however, does not resolve the entirety of Appellant's conviction for violating graves. Appellant was also convicted of first-Degree Desecration of Venerated Objects. That statute, KRS 525.105(1) is as follows: "A person is guilty of desecration of venerated objects in the first degree when, other than authorized by law, he intentionally excavates or disinters human remains for the

---

[4] United States v. Patel, 370 F.3d 108, 114 (1st Cir. 2004)(" The limited effect of the Double Jeopardy Clause on multiple punishment claims derives from 'the principle that the power to define criminal offenses and prescribe punishments ... belongs solely to the legislature.' As a result, if the legislature decides to impose multiple punishments for the same offense, it may do so. Thus, determining the permissibility of imposing multiple punishments for one course of conduct is a matter of discerning the legislature's intent.

Often, however, this intent will not be apparent. In such cases, the Blockburger test is employed to determine whether the legislature intended to authorize multiple punishments. Under Blockburger, 'where the same act or transaction constitutes a violation of two (or more) distinct statutory provisions, the test to be applied to determine whether there are two (or more) offenses or only one is whether each provision requires proof of an additional fact which the other does not.' It must be emphasized, however, that for multiple punishment claims, Blockburger merely provides a default rule of statutory construction and should be employed only in the absence of a clear indication of legislative intent. (Internal citations omitted.)")

6

purpose of commercial sale or exploitation of the remains themselves or of objects buried contemporaneously with the remains." This crime is a Class C felony. KRS 525.105(2). The elements of first-degree desecration of venerated objects are (1) excavation or disinterment of human remains, (2) where the disinterment or excavation is done for the purpose of commercial sale or exploitation of the remains or objects buried with the remains.

Though the elements of first-degree desecration of venerated objects (KRS 525.105) appear superficially different than the elements of violating a grave (KRS 525.115), the former includes the latter. The digging up or disinterment of human remains, as required for a violation of KRS 525.105 necessarily requires damaging or destroying a grave or tomb, the fundamental act required for a violation of KRS 525.115. First-degree desecration of a venerated object, the higher charge (a Class C felony), requires the added element of causing the damage for the purpose of commercial exploitation. Commission of an act that would constitute desecration of venerated objects would of necessity amount to violating graves. In a proper case, if the trier of fact was unconvinced that the purpose of the act was commercial exploitation, but believed the evidence of mutilation, guilt of violating graves would be an appropriate verdict. As such, violating graves is a lesser-included offense of first-degree desecration of venerated objects, and under the Blockburger test, a defendant cannot be convicted of both crimes for the same act.

A similar conclusion would follow with respect to criminal mischief. Conduct that would amount to desecration of venerated objects would also include conduct that would constitute ordinary criminal mischief, the difference being that desecration of

7

venerated objects must include disturbance of a burial place and be for the purpose of commercial sale or exploitation.

## C. First-Degree Desecration of Venerated Objects and Theft by Unlawful Taking

Theft by unlawful taking requires that a defendant "[t]ake [or exercise] control over movable property of another with intent to deprive him thereof . . . ." KRS 514.020. Appellant argues that objects buried with a body lose their character as property, as contemplated by the theft statute because KRS 525.105 converts the property into "venerated objects." He also argues that a person cannot be convicted of desecration and theft of the same object. The first argument is simply incorrect, and the second is based on a misunderstanding of the act prohibited by the desecration statute.

The desecration statute does not alter the character of an object interred with a body, nor are such objects abandoned and rendered "there for the taking", as Appellant implies. Objects interred with human remains belong to the estate of the decedent or to the decedent's successor in interest, or perhaps to the original owner. Such objects are neither abandoned property, nor do they cease to be "property" within the purview of theft statutes.

The criminal act described by the desecration statute is excavation or disinterment of human remains with the intent to commercially exploit the remains or objects buried with them. Violation of this statute does not require that objects buried with the remains be destroyed, damaged, or taken. The crime is completed upon the excavation or disinterment with the requisite intent. Thereafter, the act of taking the human remains or objects buried with the remains constitutes the separate crime of theft by unlawful taking. Application of these statutes is analogous to the crimes of burglary and theft. The crime of burglary is complete upon unlawful entry accompanied

8

by the intent to commit a crime. Theft of property or other criminal acts that occur thereafter may be separately prosecuted.[5] Therefore, Appellant's convictions for first-degree desecration of venerated objects and theft by unlawful taking do not violate double jeopardy principles.

As explained hereinabove, I believe Appellant's convictions for two counts of criminal mischief and one count of violating graves were obtained in violation of double jeopardy principles. These convictions should be vacated and dismissed. Appellant's convictions for desecration of venerated objects and theft by unlawful taking should be affirmed.

Schroder, J., joins this opinion dissenting in part.

---

[5] Campbell v. Commonwealth, 732 S.W.2d 878 (Ky. 1987).

9

# Supreme Court of Kentucky

2005-SC-000749-MR

ROBERT (BOB) TERRY                                                    APPELLANT

                        ON APPEAL FROM OWSLEY CIRCUIT COURT
V.            HONORABLE DENNIS JEFFREY CHOATE, JUDGE
                            NO. 04-CR-00036-001

COMMONWEALTH OF KENTUCKY                                    APPELLEE

## ORDER MODIFYING MEMORANDUM OPINION
## OF THE COURT, RENDERED DECEMBER 20, 2007

On the Court's own motion, the Memorandum Opinion of the Court,

rendered December 20, 2007, is MODIFIED on its face; and the attached page 1

of the opinion is substituted for the original page 1. The modification does not

affect the holding of the case.

ENTERED: June 13, 2008.

_____
CHIEF JUSTICE

# Supreme Court of Kentucky

## 2005-SC-000749-MR

ROBERT (BOB) TERRY                                            APPELLANT

V.

ON APPEAL FROM OWSLEY CIRCUIT COURT
HONORABLE DENNIS JEFFREY CHOATE, JUDGE
NO. 04-CR-00036-001

COMMONWEALTH OF KENTUCKY                           APPELLEE

## ORDER OF CORRECTION

On the Court's own motion, the Memorandum Opinion of the Court,

rendered December 20, 2007, and modified June 13, 2008, is CORRECTED on

its face; and the attached pages 1 and 18 of the opinion are substituted for the

original pages 1 and 18. Said correction does not affect the holding of the case.

ENTERED: August 26, 2008.

CHIEF JUSTICE JOHN D. MINTON, JR.