RENDERED: JANUARY 28, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0092-MR

ALFRED T. KESSEH                                                              APPELLANT

v.          APPEAL FROM JEFFERSON CIRCUIT COURT
            HONORABLE A. C. MCKAY CHAUVIN, JUDGE
            ACTION NO. 19-CR-000237

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
REVERSING

** ** ** ** **

BEFORE: JONES, LAMBERT, AND K. THOMPSON, JUDGES.

LAMBERT, JUDGE: Alfred T. Kesseh appeals from the Jefferson Circuit Court's

order holding him in contempt and sentencing him to six months' incarceration.

Because the written decision here is inconsistent with the trial court's oral

directives to Kesseh, we must reluctantly reverse.

When orally setting pretrial conditions of release for Alfred Kesseh

for numerous charges, including rape, the Jefferson Circuit Court orally instructed

Kesseh to refrain from contacting any prosecuting witnesses. However, the court's subsequent bond order omitted that "no contact" language. The question is whether Kesseh could be held in criminal contempt for attempting to contact a victim via telephone. As innumerable Kentucky opinions have explained, when a court makes an oral statement which is inconsistent with a written decision, the written decision controls. *See, e.g.*, *Younger v. Evergreen Group, Inc.*, 363 S.W.3d 337, 340 (Ky. 2012).

The narrow facts germane to the extremely limited issues before us are essentially uncontested. Kesseh was charged with a host of offenses, including multiple counts of robbery and theft and one count of rape. After arraignment, the Jefferson Circuit Court lowered the bond previously set by the Jefferson District Court. During that proceeding, the court orally told Kesseh to refrain from contacting the Commonwealth's witnesses. However, the trial court's subsequent written order did not contain any "no contact" provisions, nor any other nonfinancial conditions.[1] Kesseh apparently was unable to post sufficient bond to be released prior to trial.

---

[1] In its entirety, the body of the order provides:

> This matter came before the Court on February 1, 2019, 2019, [sic] for a bond hearing. The Defendant and counsel were all present.
> Following discussion of record, and the Court being otherwise sufficiently advised;
> **IT IS HEREBY ORDERED** that, for the reasons stated on the record, the Defendant's bond is fixed at $100,000 full cash.

At trial, a jury found Kesseh guilty of most charges, including the rape. While in jail awaiting sentencing, Kesseh (or someone using his jail phone account PIN) placed a collect call to the number used to call the police the night of the rape. The recipient of the call, who was the rape victim's roommate's boyfriend, curiously accepted the collect charges and a brief, unpleasant conversation ensued. Kesseh did not succeed in his attempt to speak to the victim.

The Commonwealth filed a motion seeking to hold Kesseh in contempt. The motion states in relevant part that "[o]n May 6, 2019, the Commonwealth moved for the entry of an order forbidding contact between the defendant and his rape victim. The Court granted the motion." R. at 430. But the Commonwealth did not attach any such order to its motion, nor has it subsequently produced one. Instead, in late April 2019, the Commonwealth filed a motion for a protective order, to be heard on May 6, 2019, which asked the court to order that Kesseh "not be given physical possession" of certain discovery. R. at 51. On May 6, 2019, the court granted the protective order but that order merely states that Kesseh's counsel "may not provide copies of the medical records, associated phot[o]s and/or the victim's identifying information to the Defendant without first

---

**SO ORDERED** this 1ˢᵗ day of February, 2019.

Record (R.) at 42. Similarly, the "bail conditions" section of the accompanying form AOC-365.3 bond decision, which was not even signed by the judge, states only "corrected bond[.]" R. at 41.

-3-

obtaining the permission of the Court." R. at 54. In other words, the Commonwealth's motion for contempt was incorrect regarding the existence of a circuit court order expressly forbidding Kesseh from contacting the victim.

The circuit court held a hearing on the motion for contempt, at which an audio recording of the court's oral admonition to Kesseh to refrain from contacting the Commonwealth's witnesses was played. Among other evidence, the audio of Kesseh's call with the victim's roommate's boyfriend was also played. At the hearing, the court forthrightly admitted that the lack of a written order prohibiting Kesseh from contacting the witnesses was problematic.

Nonetheless, soon thereafter, the court issued an order finding that there "was no doubt" that Kesseh tried to contact a witness and thus "acted in willful disregard toward and open disrespect for the aforementioned 'no contact' Order . . . ." R. at 469. The court thus granted the Commonwealth's motion and found Kesseh to be in contempt and ordered him to serve six months in the Jefferson County Jail consecutive to the twenty-seven-year sentence he received for the rape and other offenses. Kesseh then filed this appeal.[2]

Kesseh raises a number of interrelated issues but does not contest the trial court's factual conclusion that he placed the collect call from jail seeking to

---

[2] This appeal focuses exclusively on the contempt conviction. Kesseh's appeal from his conviction for rape and other felony offenses is pending before the Kentucky Supreme Court in *Kesseh v. Commonwealth*, No. 2021-SC-0032-MR.

speak with the victim. Indeed, the evidence on that point is overwhelming.

Instead, as we construe it, the main issue raised by Kesseh (albeit framed somewhat differently than the manner in which we shall address it) is whether he may be held in contempt for violating a court's oral admonition which the court failed to include in its subsequent written order. A court possesses discretion in utilizing its contempt powers, and so we review under the abuse of discretion standard. *Meyers v. Petrie*, 233 S.W.3d 212, 215 (Ky. App. 2007).

The Commonwealth cites precedent generally standing for the proposition that a person may be held in contempt for violating a court's oral directive. *See, e.g.*, *Leibson v. Taylor*, 721 S.W.2d 690 (Ky. 1986), *overruled on other grounds by Shaffer v. Morgan*, 815 S.W.2d 402 (Ky. 1991). But that precedent is materially distinguishable because it does not involve a later written order which omitted the oral directive.

We have not independently located, nor have the parties "cited us to any precedent for this [precise factual] question. And we believe the issue can be settled within the framework of our general precedent regarding the precedence written orders take over verbal statements." *McCloud v. Commonwealth*, 286 S.W.3d 780, 789 (Ky. 2009). We therefore need not address any of Kesseh's other arguments or the Commonwealth's responses thereto as we deem them to be irrelevant, redundant, unnecessary, or otherwise without merit.

"In Kentucky, a court speaks through the language of its orders and judgments." *Glogower v. Crawford*, 2 S.W.3d 784, 785 (Ky. 1999). Indeed, the Commonwealth admits in its brief that "[a]s a general rule, an oral pronouncement is not a judgment until it is reduced to writing." *Brock v. Commonwealth*, 407 S.W.3d 536, 538 (Ky. 2013). That rule is sound because the courts of Kentucky are courts of record and "[i]t is elementary" that the "only" official record is the written decision issued and signed by the court. *Commonwealth v. Wilson*, 280 Ky. 61, 132 S.W.2d 522, 523 (1939). After all, not every person can be in a courtroom to hear a judge's oral pronouncements but every person may review a court's final, written decision. Here, for example, the victim who Kesseh attempted to contact would have had no way of knowing from reviewing only the written record that Kesseh had been orally instructed not to contact her.

Similarly, though Kesseh did not actually post a sufficient bond to be released, any surety who would have assisted him in posting a bond would not have been able to discern from the circuit court's bond order that a condition of Kesseh's release was to refrain from contacting any witnesses. Thus, Kesseh's contempt is based upon grounds which would have been insufficient to lead to forfeiture of any bond posted by a surety. *See Passmore v. Commonwealth*, 580 S.W.3d 558, 563 (Ky. App. 2019) (noting that "so far as this Court is aware, in every case where a nonfinancial condition has been contemplated as a basis of

bond forfeiture, the nonfinancial condition at issue was – whether by a checked box, filled-in blank, or otherwise – explicitly stated in an effective court order and ensuing bond agreement.").

In addition, during court proceedings judges "often voice views and opinions which may be inconsistent with their final judgments." *Commonwealth v. Hicks*, 869 S.W.2d 35, 38 (Ky. 1994), *overruled on other grounds by Keeling v. Commonwealth*, 381 S.W.3d 248, 258-59 (Ky. 2012). Judges, especially on motion days, must make numerous decisions in numerous cases involving numerous areas of the law. In so doing, judges may posit Socratic or leading questions to counsel or parties to test the logical underpinnings of any party's position. Moreover, the judge may have an initial view of a matter which evolves after the judge has had an opportunity to reflect and conduct legal research. In short, it would lead to "chaos" if a judge's oral comments "could be used to impeach the effect of a court's final judgment . . . ." *Hicks*, 869 S.W.2d at 38. Therefore, there is an ironclad line of cases stretching back many years espousing the same core tenets: a court officially speaks through its written decisions and so a written decision controls over any even "arguably contrary" oral comments made by a court. *Terry v. Commonwealth*, 253 S.W.3d 466, 477 (Ky. 2007).

Perhaps the written order and the trial court's oral comments could be construed not to be in direct opposition to each other since the written order does

not expressly countermand the oral directive by granting permission for Kesseh to contact the witness(es). However, viewed from another perspective, the written order is contrary to, or at least inconsistent with, the court's oral pronouncements since the court orally imposed a nonfinancial condition of release whereas the written order contains *no* nonfinancial conditions. Whether the written order and the court's oral comments are viewed as directly conflicting or only being inconsistent with each other, the bedrock principles previously discussed regarding the primacy of written orders apply.

Courts of record, including the Jefferson Circuit Court, speak only through their written orders, *Glogower*, 2 S.W.3d at 785, and so oral pronouncements not later included in the written decision are not considered part of a judgment. *Brock*, 407 S.W.3d at 538. As our Supreme Court succinctly held: "When there is an inconsistency between oral statements of a court and an order reduced to writing, the latter must prevail." *Commonwealth v. Taber*, 941 S.W.2d 463, 464 (Ky. 1997), *overruled on other grounds by Keeling v. Commonwealth*, 381 S.W.3d 248, 258-59 (Ky. 2012).

As the written decision here contains no language whatsoever which prohibited Kesseh from contacting the witness(es), it is, at bare minimum, inconsistent with the court's oral statements. Consequently, the written decision controls. As a result, in practical terms, Kesseh is correct when he argues that the

oral prohibition on contacting witnesses had been superseded and thus "did not exist at the time of the misconduct." Reply brief, p. 2.

The circuit court noted in its contempt decision that the district court's bond order(s) prohibited Kesseh from contacting the witness(es). That is true, but irrelevant. The district court's bond decision became moot and unenforceable once the circuit court issued its own bond decision, *Jeter v. Commonwealth*, 554 S.W.3d 850, 852 (Ky. 2018), and "[n]owhere in its record did the circuit court attach any conditions upon [Kesseh's] bail, or specify that it was continuing any of the conditions set by the district court." *Passmore*, 580 S.W.3d at 562. So, once the issue of Kesseh's bail passed from district to circuit court, "the district court's prior bail order expired, and any requirements which attended it did not automatically 'carry over,' but instead became moot and unenforceable." *Id.* at 563. Similarly, though Kesseh admits in his brief that the court could have validly incorporated by reference its oral findings and statements into the written bond order, *Jeter*, 554 S.W.3d at 854, the order at issue does not contain any incorporation language.

Boiling matters down to their essence, Kesseh was found in contempt for violating an oral admonition not contained in the court's subsequent written

decision. Since written decisions trump any inconsistent oral comments, Kesseh cannot properly be held in contempt.[3]

We recognize that this result is likely distasteful to many, and we share the circuit court's disapproval of Kesseh's conduct. We also in no way excuse any person from disobeying an oral directive of a court. However, under the unique facts of this case, the circuit court's inexplicable failure to include any "no contact" language in its written order means that Kesseh's phone call, though improper, did not violate a then-operative, mandatory court directive. Because a person cannot be held in contempt for disobeying a command which had been superseded or otherwise rendered inoperative at the time it was disobeyed, the circuit court abused its discretion in finding Kesseh to be in contempt. We express no opinion as to whether on remand Kesseh may properly be charged with any criminal offense(s) for attempting to contact the victim.

For the foregoing reasons, the order of the Jefferson Circuit Court finding Alfred Kesseh to be in contempt of court is reversed and the case is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

---

[3] At the contempt hearing, there was a discussion about how it is not absolutely necessary for a written order to be violated for a person to be held in contempt. That is, of course, correct. For example, as discussed at the hearing, a person who egregiously misbehaves in court may be held in contempt. But here, there was a written order–it just did not forbid the conduct which forms the sole basis for Kesseh's contempt conviction.

BRIEFS FOR APPELLANT:

Christopher B. Thurman
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky