**Robert E. GREENE, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2006–CA–002485–MR.**

Court of Appeals of Kentucky.

Jan. 4, 2008.

Shane A. Young, Elizabethtown, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Perry T. Ryan, Assistant Attorney General, Frankfort, KY, for appellee.

Before STUMBO and WINE, Judges; GUIDUGLI,[1] Senior Judge.

## OPINION

WINE, Judge.

On June 30, 2005, a Hardin County grand jury returned an indictment charging Robert E. Greene with one count each of operating a motor vehicle with an alcohol concentration of or above 0.08(DUI), fourth offense (KRS 189A.010); and operating a motor vehicle while his license was revoked or suspended for driving under the influence (KRS 189A.090). Prior to trial, Greene moved to suppress evidence seized and statements which he made following a traffic stop on April 20, 2005. Following an evidentiary hearing, the trial court denied the motion.

The matter proceeded to a jury trial on June 12–15, 2006. Greene moved for a directed verdict of acquittal at the conclusion of the Commonwealth's case and at the close of the evidence. The trial court denied both motions. Thereafter, the jury found Greene guilty on both charges. The jury fixed Greene's sentence at five years on the DUI charge and twelve months on the suspended license charge, to run concurrently for a total of five years' imprisonment. On October 10, 2006, the trial court entered a judgment imposing the jury's sentence. This appeal followed. Finding no reversible error, we affirm.

Greene first argues that the trial court erred by denying his motion to suppress evidence seized as a result of the traffic stop, including the officer's observations, results of the field sobriety tests, statements made by Greene at the scene, and the results of the Intoxilyzer test performed after his arrest. Greene contends that there was no reasonable suspicion to justify the initial stop, the officer was not properly qualified to perform the field sobriety tests, and the results of the portable breath test were not admissible at the suppression hearing. Greene also argues that his statements made after the stop and following his arrest should have been suppressed because the police officers failed to advise him of his *Miranda* rights. Finally, Greene asserts that the results of the Intoxilyzer test should have been suppressed because the officer failed to observe him for twenty minutes before administering the test, as required by KRS 189A.103.

RCr 9.78 sets out the procedure for conducting suppression hearings and establishes the standard of appellate review of the determination of the trial court. Our standard of review of a trial court's decision on a suppression motion following

---

1. Senior Judge Daniel T. Guidugli sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

a hearing is twofold: first, the factual findings of the court are conclusive if they are supported by substantial evidence; and second, this Court conducts a *de novo* review to determine whether the trial court's decision is correct as a matter of law. *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998); *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky.App.2002).

At the suppression hearing, Officer Terry Cox of the Elizabethtown Police Department testified regarding the circumstances of the traffic stop on April 20, 2005. At approximately 9:30 p.m. that evening, a person identifying herself as Donna Greene telephoned the police department. She stated that Robert Greene was presently at the Dairy Queen on U.S. Highway 62 in a Mazda pickup truck. She also reported that Robert Greene had been drinking and that his license was suspended.

Arriving at the scene shortly thereafter, Officer Cox observed a Mazda pickup truck in the parking lot. While observing the vehicle, Officer Cox confirmed that Greene's license was suspended. After some time, the pickup truck pulled out of the parking lot onto Cardin Street, which runs behind the Dairy Queen. Cardin Street makes a hard left turn just before intersecting with U.S. 62. However, the pickup truck missed the turn and drove into the parking lot of a welding supply store. The welding supply store was closed and the parking lot was empty. Officer Cox saw the pickup truck exit the parking lot back onto Cardin Street. The truck then turned east on U.S. 62.

Shortly thereafter, Officer Cox and other Elizabethtown police officers stopped the pickup truck. Upon approaching the truck, Officer Cox asked Greene, the driver, for his license. Greene replied that he did not have one. Officer Cox testified that he smelled alcohol on Greene's breath.

Upon further questioning, Greene admitted to having two beers prior to driving.

Officer Cox then administered two field sobriety tests, which Greene failed. Another officer at the scene, Officer Fegett, then administered the Preliminary Breath Test (PBT), as permitted by KRS 189A.100(1), which indicated the presence of alcohol. At that point, Greene was placed under arrest for DUI and driving on a suspended license. At the Hardin County Detention Center, Officer Cox administered a standard breath test on the Intoxilyzer 5000 EN. The machine measured Greene's blood-alcohol level at .096%.

■ Greene first argues that Officer Cox lacked a reasonable suspicion to justify the initial traffic stop. An officer with probable cause to believe that a traffic violation has occurred may stop the suspected vehicle. *Wilson v. Commonwealth*, 37 S.W.3d 745 (Ky.2001); *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979). But to justify a stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the officer must be able to articulate more than a mere "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. *Id.* at 27, 88 S.Ct. at 1883. Rather, a warrantless stop of a vehicle is permissible if the officer has an "articulable and reasonable suspicion" of criminal activity. *Creech v. Commonwealth*, 812 S.W.2d 162, 163 (Ky.App.1991).

■ The objective justification for the officer's actions must be measured in light of the totality of the circumstances. *See United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Eldred v. Commonwealth*, 906 S.W.2d 694 (Ky.1994). When considering the totality of the circumstances, a reviewing court should take care not to view the factors upon which police officers rely to create reasonable

suspicion in isolation. Courts must consider all of the officers' observations, and give due weight to the inferences and deductions drawn by trained law enforcement officers. *United States v. Arvizu,* 534 U.S. 266, 272–75, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002). *See also United States v. Martin,* 289 F.3d 392, 398 (6th Cir.2002).

In this case, Officer Cox articulated specific facts supporting a reasonable suspicion justifying a traffic stop. First, Officer Cox received a credible report that Greene was operating his vehicle under the influence of alcohol. Second, Officer Cox observed the vehicle as described in the report. Third and most importantly, Officer Cox confirmed that Greene's license was suspended. Finally, Officer Cox saw Greene's truck miss the turn on Cardin Street and drive into an empty parking lot. Considering the totality of these circumstances, we agree with the trial court that Officer Cox had a reasonable and articulable suspicion that Greene was operating the vehicle under the influence of alcohol.

Greene next argues that Officer Cox lacked probable cause to arrest him. In particular, he contends that Officer Cox failed to establish that he was qualified to administer the field sobriety tests. During cross-examination, Greene's counsel questioned the sufficiency of Officer Cox's training and his certification to administer field sobriety tests. However, Officer Cox testified that he had been trained to perform the tests and he demonstrated the tests for the trial court. While the evidence on this point was conflicting, there was substantial evidence to support the trial court's conclusion that Officer Cox was qualified to administer the tests.

Greene next argues that the trial court erred by considering the results of the Preliminary Breath Test (PBT) during the suppression hearing. He points to KRS 189A.104(2), which provides that "[t]he results of any breath analysis by an instrument other than [a machine installed, tested, and maintained by the Commonwealth for that specific purpose at a police station or detention facility] shall be inadmissible in court." Given this categorical language in the statute, Greene contends that the results of the PBT are inadmissible for any purpose.

Prior to the enactment of KRS 189A.104 in 2000, Kentucky case law permitted mention of the PBT, but testimony regarding the specific results was inadmissible. *See Commonwealth v. Rhodes,* 949 S.W.2d 621 (Ky.App.1996); *Allen v. Commonwealth,* 817 S.W.2d 458 (Ky.App.1991). Further, the refusal to submit to a PBT could not be used against the driver suspected of being under the influence of intoxicants. KRS 189A.100(1). Contrary to Greene's argument, the enactment of KRS 189A.104 does not clearly abrogate this rule. Rather, KRS 189A.104 specifies that only the results from tests conducted with a stationary machine or blood or urine testing may be used for enhancement of penalties or when considering the punishment for refusing to submit to a breath test. As the Commonwealth contends, a trial court may consider the pass/fail determination of the PBT to rule on the question of probable cause for arrest.

Probable cause for arrest occurs when a reasonable officer could conclude from all the facts and circumstances that an offense is being committed in his presence. *Commonwealth v. Fields,* 194 S.W.3d 255, 258 (Ky.2006). A finding of probable cause may be based upon evidence, such as hearsay, which would be inadmissible at trial. *See* RCr 3.14. *See also White v. Commonwealth,* 132 S.W.3d 877, 882–83 (Ky.App.2003). Thus, while

the results of a PBT are clearly inadmissible to prove guilt or for sentencing purposes, we conclude that the pass/fail result of a PBT is admissible for the limited purpose of establishing probable cause for an arrest at a hearing on a motion to suppress.

 We do agree however that it is imperative the arresting officer demonstrate proficiency in utilizing the PBT as well as evidence the PBT be in proper working order. Even if we should find the Commonwealth failed to show one or both of these, we conclude that the Commonwealth presented sufficient evidence supporting a finding of probable cause even without the results of the PBT. Finally, neither the pass/fail result, nor the numerical result of the PBT, was presented to the jury. Consequently, any error in the judge considering the PBT results would be harmless.

 Greene next argues that the trial court should have suppressed the statements which he made to Officer Cox both before and after his arrest. Shortly after the initial traffic stop, Greene told Officer Cox that he had consumed two beers. He also admitted that he did not have a driver's license. Following his arrest and while at the jail, he told Officer Cox that he had two twenty-two ounce beers before he drove to Dairy Queen. Since no *Miranda* warnings were given before he was questioned, Greene contends that his statements must be suppressed.

 *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires police officers to advise suspects of their rights against self-incrimination and to an attorney prior to subjecting them to custodial interrogation. However, a *Miranda* warning is not required when a suspect is merely taken into custody, but rather when a suspect in custody is subject to interrogation. *Miranda,* 384 U.S. at 478–79, 86 S.Ct. at 1602, 1629. *See also Watkins v. Commonwealth,* 105 S.W.3d 449 (Ky.2003). As a general rule, ordinary traffic stops do not constitute custody for purposes of *Miranda. Pennsylvania v. Bruder,* 488 U.S. 9, 11, 109 S.Ct. 205, 207, 102 L.Ed.2d 172 (1988). Thus, Greene was not subject to a custodial interrogation when he made his initial statements to Officer Cox, and *Miranda* warnings were not required.

 On the other hand, Greene was in custody when he made his later statement about the amount of beer he had consumed. Furthermore, interrogation has been defined to include "any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect ... focus[ing] primarily upon the perceptions of the suspect, rather than the intent of the police." *Wells v. Commonwealth,* 892 S.W.2d 299, 302 (Ky.1995), *quoting Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). After administering the Intoxilyzer test, Officer Cox specifically asked Greene how much and where he had consumed the alcohol. This was clearly a custodial interrogation subject to the requirements of *Miranda.* Since Officer Cox did not advise Greene of his *Miranda* rights before asking these questions, Greene's statement should have been suppressed.

 Nevertheless, we find this error harmless beyond a reasonable doubt. Greene's second statement at the detention center was mostly cumulative of his earlier statement at the scene of the traffic stop. The only additional information concerned the quantity of beer he had consumed and where he had been drinking. Given the other evidence, particularly the

Intoxilyzer test results, we cannot say that the admission of Greene's second statement affected the outcome of the proceeding.

■ This brings us to the central issue presented in this appeal: the admissibility of the Intoxilyzer test results. As Greene correctly notes, KRS 189A.103(3) requires that a police officer personally observe the individual for twenty minutes before administering the test. The purpose of the twenty-minute observation time is to insure the subject does not place anything in his mouth or nose which might affect the accuracy of the test and insure residual alcohol in the mouth has dissipated. *Eldridge v. Commonwealth,* 68 S.W.3d 388 (Ky.App.2001). In this case, however, Officer Cox's documentation regarding the observation period is inconsistent. The parties agree that Greene was arrested at 9:57 p.m. At 10:08 p.m., Officer Cox arrived at the detention center with Greene. The paperwork indicates that Officer Cox began the twenty-minute observation period of Greene at 11:11 p.m., but the Intoxilyzer ticket states that the test was performed at 10:41 p.m. Officer Cox explained that the first time was an error, and that the observation period actually began at 10:11 p.m. But Officer Cox's records also state that he cleared the scene and completed the call at 10:29 p.m., and the records from the Hardin County Detention Center show that Greene was booked into jail at 10:35 p.m., both of which would have been before the Intoxilyzer test was administered.

Notwithstanding the inconsistencies in the documentation, the trial court accepted Officer Cox's testimony that he observed Greene for twenty minutes prior to administering the Intoxilyzer test. The evidence could have supported a contrary conclusion. But we cannot say that the evidence would compel such a finding. The trial

court is in the best position to judge the credibility of witnesses and this Court is bound by the trial court's findings of fact unless there is a clear error or abuse of discretion. *Commonwealth v. Whitmore,* 92 S.W.3d 76, 79 (Ky.2002). Although the documentation was not clear regarding exactly when the observation period began and ended, Officer Cox was certain that he observed Greene for the required twenty minutes. Under the circumstances, we cannot say that Officer Cox's testimony was so improbable as to render it unworthy of credence. Therefore, the trial court did not err by denying the motion to suppress the Intoxilyzer results.

Furthermore, there was evidence that the Intoxilyzer test was administered to Greene within two hours after he was operating a motor vehicle. *See* KRS 189A.010(1)(e). *See also Lopez v. Commonwealth,* 173 S.W.3d 905, 907–08 (Ky. 2005). There was also other evidence that the Intoxilyzer machine was properly calibrated and that the test was properly administered. Given this evidence and the Intoxilyzer test results, the trial court properly denied Greene's motion for a directed verdict of acquittal.

■ Greene next takes issue with the trial court's instructions to the jury. He first argues that the trial court improperly instructed the jury on a theory which was not supported by the evidence. In particular, he points out that the DUI instruction allowed the jury to find guilt if it found, in pertinent part, that he was operating a motor vehicle while "the alcohol concentration in his blood or breath was of or above 0.08 or while he was under the influence of alcohol *or any other substance which may impair one's driving ability." (Emphasis added).* Greene complains that the latter portion of this instruction allowed the jury to speculate whether he

was under the influence of any substance other than alcohol.

■ But to preserve any error relating to the failure to give an instruction, there must be an objection in the record stating specifically the matter to which the party objects and the ground therefore. RCr 9.54(2). Merely tendering an alternative instruction is not sufficient. *Grooms v. Commonwealth,* 756 S.W.2d 131, 140 (Ky. 1988). Thus, Greene's objection to the instruction is not preserved for review.

■ Greene also contends that he was entitled to a missing evidence instruction because the police officers failed to make a video recording of the traffic stop. "[T]he purpose of a 'missing evidence' instruction is to cure any Due Process violation attributable to the loss or destruction of *exculpatory* evidence by a less onerous remedy than dismissal or the suppression of relevant evidence." *Estep v. Commonwealth,* 64 S.W.3d 805, 810 (Ky.2002). In the absence of any evidence that the loss of or failure to collect evidence was intentional, no due process interests are implicated. *Id.* Further, KRS 189A.100(2) provides, "Law enforcement agencies *may* record ... the traffic stop, or field sobriety tests...." (Emphasis added). Thus, the recording is not mandatory. Therefore, Greene was not entitled to a missing evidence instruction.

■ Greene next argues that the trial court improperly admitted evidence that his seventeen-year-old son was in the vehicle at the time of the traffic stop. Before trial, Greene filed a motion *in limine* to exclude this evidence, arguing that this fact was irrelevant and unfairly prejudicial. The trial court denied the motion and allowed the evidence to be introduced at trial.

The Commonwealth argues that the evidence was admissible because Greene could have been charged with wanton endangerment. But a defendant is entitled to be tried solely on the question of his guilt of the offense charged in the indictment. *Lantrip v. Commonwealth,* 713 S.W.2d 816, 817 (Ky.1986). Unlike in *Ramsey v. Commonwealth,* 157 S.W.3d 194 (Ky.2005), Greene was not charged with wanton endangerment. Furthermore, the Commonwealth does not contend that the presence of Greene's son was relevant to either the DUI or the suspended license charge.

However, Greene does not dispute that his son was present in the vehicle. While this fact was of limited relevance to the issues of the case, it was relevant to a full understanding of the circumstances surrounding the traffic stop. Moreover, we find no indication that the Commonwealth placed any undue emphasis on this fact either during the guilt or the penalty phase. Under the circumstances, we cannot find that the unfairly prejudicial effect of the evidence outweighed its probative value. KRE 403.

■ Greene further argues that the trial court should have granted a mistrial due to prosecutorial misconduct. During his closing, Greene's counsel made an emotional appeal to the jury to consider how the arrest and trial affected Greene's family. During the Commonwealth's closing argument in the penalty phase, the prosecutor stated, "Should we give him the minimum and wait for something else?" Counsel objected, citing "the golden rule" as the basis for the objection. The trial court sustained Greene's objection, but refused to declare a mistrial. The court offered to admonish the jury to disregard the comment, the prosecutor agreed to an admonition, but Greene's counsel declined.

■ Greene contends that a mistrial was necessary because no admonition

could have cured the unfair prejudice resulting from the prosecutor's statement. However, a mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity. Furthermore, a jury is presumed to follow an admonition to disregard evidence; thus, the admonition cures any error. *Mills v. Commonwealth,* 996 S.W.2d 473, 485 (Ky.1999). There are only two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition and there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant; or (2) when the question was asked without a factual basis and was "inflammatory" or "highly prejudicial." *Johnson v. Commonwealth,* 105 S.W.3d 430, 441 (Ky.2003). As Greene made neither showing, there was no manifest necessity for a mistrial and the trial court did not abuse its discretion by denying the motion. *See also Woodard v. Commonwealth,* 147 S.W.3d 63, 68 (Ky.2004).

While we note the prosecutor's comment comes dangerously close to "send a message," a practice which is not favored, we do not believe he crossed that line. *Brewer v. Commonwealth,* 206 S.W.3d 343, 350 (Ky.2006).

Finally, Greene claims that, even if the aforementioned irregularities do not individually warrant reversal, their cumulative effect was to deny him a fair trial. However, we have found no error except the improper admission of Greene's second statement, which did not prejudice Greene's substantial rights. We likewise find no cumulative prejudice warranting reversal. *See Woodall v. Commonwealth,* 63 S.W.3d 104, 134 (Ky.2001). Moreover, we are persuaded that Greene received a fundamentally fair trial.

Accordingly, the judgment of conviction by the Hardin Circuit Court is affirmed.

ALL CONCUR.