Gary LLOYD, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2008–SC–000206–MR.

Supreme Court of Kentucky.

Oct. 21, 2010.

Brandon Neil Jewell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Gregory C. Fuchs, Todd Dryden Ferguson, Assistant Attorneys General, Office of Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

A circuit court jury convicted Gary Lloyd of both robbery and felony theft for stealing drugs from a drugstore. Lloyd contends that his conviction on both offenses for stealing the same items violates double jeopardy principles. Even though the separate offenses of felony theft and robbery each contains an element the other does not, we agree with Lloyd because the General Assembly has made plain its intent that a person may not be convicted of both robbery and theft by unlawful taking based upon one theft. We reject

Lloyd's other argument that the trial court erred by denying his motion to suppress.

## I. FACTUAL AND PROCEDURAL HISTORY.

A man walked into a drugstore, pointed a handgun at a store employee, announced that this was a hold-up, and demanded OxyContin.[1] Another store employee unlocked the drug safe, and the robber took drugs from the safe and put them in a bag. During the robbery, a customer entered the store, observed someone taking items from the safe, walked outside, and called 911. The customer watched the robber flee the store.

Officers heard a description of the vehicle fleeing the robbery as being a small foreign car, possibly a Toyota or Nissan. Officer Glen Taylor was called to assist at a traffic stop made by another officer of a car fitting the description. Officer Taylor later testified that the driver appeared nervous and gave officers consent to search the vehicle. The officers found Gary Lloyd hiding in the trunk and carrying a handgun. The officers also found the stolen drugs in the trunk with Lloyd. One of the drugstore employees identified Lloyd as the robber.

The grand jury indicted Lloyd on one count of first-degree robbery, one count of theft by unlawful taking of property valued over $300 (felony theft), and one count of possession of a handgun by a convicted felon. The trial court severed the handgun charge and denied Lloyd's motion to suppress evidence. The robbery and theft charges proceeded to trial. A jury found Lloyd guilty of both robbery and felony theft and recommended a sentence of seventeen years' imprisonment for the robbery conviction and five years' imprisonment for the theft conviction. These sentences were to be served consecutively for a cumulative sentence of twenty-two years' imprisonment. The trial court followed the jury's recommendations.[2] Lloyd then filed this appeal as a matter of right.[3]

## II. ANALYSIS.

Lloyd raises two issues on appeal. First, he contends that his right to be free from double jeopardy was violated when he was convicted of both robbery and felony theft because each conviction was based upon the theft of the drugs. Second, he contends that the trial court erred by denying his motion to suppress. We agree with Lloyd's double jeopardy argument, but we reject his suppression argument.

### A. Double Jeopardy Violation.

Section 13 of the Kentucky Constitution provides, in relevant part, that "[n]o person shall, for the same offense, be twice put in jeopardy of his life or limb . . . ." This section of our state Constitution is known as the double jeopardy clause.[4]

---

1. "OxyContin is a prescription narcotic pain reliever that was approved by FDA in 1995 . . . and its active ingredient is oxycodone, a derivative of opium." *http://www.fda.gov/ Drugs/DrugSafety/PostmarketDrugSafety InformationforPatientsandProviders/ ucm207196.htm.*

2. Lloyd pleaded guilty to an amended charge of possession of a firearm by a convicted felon and received a sentence of three years' imprisonment to be served consecutively to the twenty-two year cumulative sentence for the robbery and theft by unlawful taking convictions. No issue pertaining to that firearm conviction or the sentence Lloyd received for it has been raised in this appeal.

3. Ky. Const. § 110(2)(b). Final judgment on the robbery and theft was entered in August 2006. About three years later, we granted Lloyd's motion for a belated appeal.

4. *See also* U.S. Const. Amend. V.

Lloyd contends that his convictions for both robbery and felony theft violate the constitutional prohibition against double jeopardy. We agree.[5]

■ In order to determine whether a person may properly be subjected to prosecution for multiple offenses based upon one act, courts use two main guideposts— the *Blockburger* test and the expressed intent of the legislature. We find in this case that first-degree robbery and felony theft withstand the *Blockburger* test but that the General Assembly has demonstrated its intent that persons such as Lloyd not be prosecuted for both robbery and theft based upon the same underlying theft.

### 1. Blockburger.

■ Nearly eighty years ago, the United States Supreme Court issued its seminal decision in double jeopardy jurisprudence, *Blockburger v. United States.*[6] In *Blockburger*, the Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[7] Kentucky uses the *Blockburger* double jeopardy test, which we have reduced to this question: "is one offense included within another?"[8] To determine whether felony theft is included within first-degree

robbery, we must closely examine and compare the elements of those offenses.

Kentucky Revised Statutes (KRS) 514.030 governs theft. At the time of Lloyd's indictment and trial, subsection one of that statute provided, in relevant part, that a person was guilty of theft by unlawful taking if he or she "unlawfully ... [t]akes or exercises control over movable property of another with intent to deprive him thereof...." Subsection two of KRS 514.030 provided that theft by unlawful taking was a "Class A misdemeanor unless the value of the property is three hundred dollars ($300) or more, in which case it is a Class D felony...."[9] Lloyd was indicted and convicted of the felony version of theft.[10]

So to commit felony theft by unlawful taking a person must: (1) Unlawfully (2) take or exercise control over movable property of another (3) with the intent to deprive the owner, and (4) the value of the property taken must be at least $300 (now $500).

Robbery in the first degree, for which Lloyd was indicted and convicted, is governed by KRS 515.020, which has not been amended since first enacted in 1974. KRS 515.020(1) provides, in relevant part, that a person commits first-degree robbery when "in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft" and "[i]s armed with a deadly weapon; or ... [u]ses or threat-

5. Lloyd did not present his double jeopardy argument to the trial court. But double jeopardy questions may be reviewed on appeal "even if they were not presented to the trial court." *Terry v. Commonwealth,* 253 S.W.3d 466, 470 (Ky.2008).

6. 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

7. *Id.* at 304, 52 S.Ct. 180.

8. *Commonwealth v. Burge,* 947 S.W.2d 805, 811 (Ky.1996).

9. In 2009, the General Assembly amended KRS 514.030 to provide that the value of the property must be $500 or more for the offense to be classified as a felony. 2009 Ky. Acts Ch. 106 (H.B.369) § 6.

10. There is no contention that the stolen items at issue had a value of less than $300.

ens the immediate use of a dangerous instrument upon any person who is not a participant in the crime."

So to commit first-degree robbery, a person must: (1) in the course of committing a theft (2) use or threaten the immediate use of physical force (3) with intent to accomplish the theft (4) while either (a) being armed with a deadly weapon or (b) using or threatening the immediate use of a dangerous instrument upon a person not a participant in the crime.

One can quickly see similarities between robbery and theft. But robbery contains elements that differ from theft because theft does not require the perpetrator to use or threaten the immediate use of physical force, nor does theft require that the perpetrator either to be armed with a deadly weapon or to use or threaten the use of a dangerous instrument. So first-degree robbery is not included within theft by unlawful taking.

The commentary to KRS 515.020, the first-degree robbery statute, provides that "[t]o be convicted under KRS 515.030, an offender must have intended, with his use or threatened use of physical force, to accomplish a theft. Through this requirement, all of the elements of the crime of theft as set forth in KRS 514.030 are incorporated into this offense."[11] In fact, precedent holds that a double jeopardy violation occurs if a person is convicted of both robbery and theft if he steals the same property.[12] Lloyd cites both the commentary to KRS 515.020 and precedent to argue that his convictions for both theft by unlawful taking and robbery violated his right to be free from double jeopardy.

But the commentary and the precedent Lloyd cites pre-date our decision in *Terry*.[13] In *Terry*, a defendant contended that several of his convictions, including one conviction for felony theft by unlawful taking, violated his right to be free from double jeopardy. In the course of resolving those double jeopardy claims, we relied upon cases from other jurisdictions to recognize for the first time in Kentucky that a threshold monetary amount in a criminal statute is an element of the offense.[14] We reasoned that in order to avoid a directed verdict on a charge with a threshold monetary amount, the Commonwealth must adduce proof satisfying that monetary amount. So "[i]f the lack of proof on any aspect of an offense would lead to a directed verdict of acquittal, that aspect must be considered an element of the offense for double jeopardy purposes."[15]

After *Terry*, we employ a general principle that a "monetary damage threshold is a distinct element" of a criminal offense.[16]

---

11. Curiously, this commentary refers to KRS 515.030, which governs robbery in the second degree even though the commentary is attached to KRS 515.020, which governs robbery in the first degree. For purposes of this appeal, however, that curiosity is irrelevant because robbery in the second degree also clearly contains an element that theft by unlawful taking does not—namely, in order to be guilty of robbery in the second degree a person must "in the course of committing theft, . . . use [ ] or threaten [ ] the immediate use of physical force upon another person with intent to accomplish the theft." KRS 515.030(1).

12. *See, e.g., McKee v. Commonwealth*, 720 S.W.2d 343, 344 (Ky.App.1986), *citing Jordan v. Commonwealth*, 703 S.W.2d 870, 873–74 (Ky.1985).

13. 253 S.W.3d 466. Although its holding provides a key to resolve this case, *Terry* inexplicably was not cited in the parties' briefs.

14. *Id.* at 471 (citing cases from Washington State and the United States Court of Appeals for the First Circuit).

15. *Id.*

16. *Id.*

In *Terry,* we applied that general principle to several specific situations, including holding that the then-$300 dollar threshold for felony theft by unlawful taking was an element that distinguished it from first-degree desecration of venerated objects.[17] And our adoption of the monetary damage threshold amount as an element of the crime of theft in *Terry* appears to be consistent with the general viewpoint expressed by a prominent legal encyclopedia, which provides that "[t]he value of the item stolen, when used to differentiate between a felony and misdemeanor offense, is an essential element of the charged crime." [18]

The question becomes whether the rationale of *Terry* requires us to disapprove of the commentary to KRS 515.020 and to overrule precedent holding that a person may not be convicted of both robbery and theft by unlawful taking based upon one common underlying theft. As will be discussed below, we believe that our decision in *Terry* is a proper exposition of the law but that it does not foreclose Lloyd from obtaining relief because the General Assembly has shown its intent to prevent prosecutions for both theft by unlawful taking and robbery based upon the same underlying theft.

Strict application of the *Blockburger* test in conjunction with our opinion in *Terry* would, standing alone, lead to a conclusion that there is no double jeopardy violation in this case because each offense contains at least one element that the other does not. But the application of *Blockburger* is not the end of our analysis because we must also determine if the General Assembly intended for one theft to be prosecuted as both theft by unlawful taking and a robbery.

### 2. Legislative Intent.

■ The *Blockburger* test, although highly useful, is simply "a rule of statutory interpretation" since "neither the United States nor the Kentucky Constitution proscribes the imposition of multiple punishments for separate offenses committed during the course of a single criminal episode." [19] Accordingly, "[t]he rule against double jeopardy in this situation [multiple criminal charges based upon one underlying act] presume[s] that where two statutory provisions proscribe the same offense, a legislature does not intend to impose two punishments for that offense." [20]

17. *Id.* at 472 ("When the elements of first-degree desecration of venerated objects are compared with the elements of theft by unlawful taking over $300, it becomes clear that Terry's convictions for those offenses did not violate double jeopardy principles. First, theft by unlawful taking over $300 contains a threshold minimum monetary property value for the item(s) taken. By contrast, first-degree desecration of venerated objects contains no · such monetary property value requirement.").

18. 50 Am.Jur.2d LARCENY § 44 (2010). Even though it specifically applies to larceny, this section of Am.Jur.2d is applicable to this case because the offense of theft by unlawful taking in Kentucky law is intended to include all prior offenses involving unlawful appropria-

tion of property, including grand and petit larceny. *See* Commentary to KRS 514.030. Although not cited by the parties, we are aware that other courts considering similar issues have come to a conclusion contrary to the general viewpoint expressed in Am. Jur.2d. *See, e.g., State v. Smith,* 117 Ohio St.3d 447, 884 N.E.2d 595, 599 (2008) ("Smith also argues that theft requires proof of the value of the property stolen, while robbery has no such element. But the elements of theft do *not* include value. Rather, value is a special finding to determine the degree of the offense, but is not part of the definition of the crime. Thus, Smith's position is not well taken.").

19. *Beaty v. Commonwealth,* 125 S.W.3d 196, 210 (Ky.2003).

20. *Id.* (quotation marks omitted).

■ As the United States Supreme Court held, "[t]he *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." [21] In other words, the *Blockburger* test must yield to a contrary expression of legislative intent.[22] Although legislative intent may often be difficult to discern, we conclude that it is discernible in this case because there are sufficient indicia of intent to prohibit convictions for both first-degree robbery and felony theft arising from one underlying theft.

First, the General Assembly chose to use prominently the word *theft* in KRS 515.020, the applicable robbery statute. Specifically, KRS 515.020(1) provides that a person commits first-degree robbery when "in the course of committing theft...." The use of the specific word *theft* in both the robbery statute and in the theft by unlawful taking statute is surely not coincidental. We believe that the use of the same term in both statutes evinces the General Assembly's intent to define robbery as being theft plus the additional element of force or threatened force.

This conclusion is readily reinforced by the previously mentioned commentary to KRS 515.020, which provides, in relevant part, that "all of the elements of the crime of theft as set forth in KRS 514.030 are incorporated into this offense." We believe that commentary, which, of course, may be used as an aid in construing the statutes of the penal code,[23] represents an unmistakable expression of intent for theft by unlawful taking to be subsumed into robbery. It would be a clear violation of legislative intent, therefore, for a person such as Lloyd to be convicted of both theft by unlawful taking and robbery based upon the same incident of theft.

Although perhaps based upon a different rationale, this conclusion is consistent with precedent holding that a double jeopardy violation occurs if a person is convicted of both robbery and theft by unlawful taking if he steals the same property.[24] Likewise, this conclusion does no violence to our holding in *Terry* that a threshold monetary amount in a statute constitutes a substantive element of that statutory offense. Rather, our holding today carves out only a narrow exception to *Terry* for cases involving prosecutions for theft by unlawful taking and robbery based upon the same underlying theft.[25]

In summary, because the General Assembly has specifically shown its intent that a person in Lloyd's position may not be convicted of both theft by unlawful

---

**21.** *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) (internal quotation marks omitted).

**22.** *Cf. Commonwealth v. Colonial Stores, Inc.,* 350 S.W.2d 465, 466 (Ky.1961) ("If the offering of each package may be considered to be a separate offense there would be no double jeopardy, because the proof required to sustain one of the indictments would not necessarily sustain any of the others [*i.e.,* the *Blockburger* same elements test has been satisfied]. We think the question is simply one of determining the legislative intent. Did the legislature intend that in the offering for sale of a particular commodity in separate packages a

separate offense would be deemed to be committed as to each package?") (citation omitted).

**23.** *See* KRS 500.100 ("The commentary accompanying this code may be used as an aid in construing the provisions of this code.").

**24.** *See, e.g., McKee,* 720 S.W.2d at 344.

**25.** Because the issue is not before us, we express no opinion as to whether it is permissible for prosecutions for robbery and any other type of theft crime to be based upon the same underlying theft.

taking and robbery based upon the same underlying theft, Lloyd's double jeopardy argument is meritorious. So Lloyd's conviction for theft by unlawful taking must be reversed, and the matter must be remanded to the trial court for dismissal of the theft by unlawful taking charge and entry of a new final judgment.[26]

## B. No Error in Denial of Motion to Suppress.

 The trial court found that the stop and seizure of the vehicle in which Lloyd was found hidden was supported by probable cause. Lloyd contends that finding is not supported by substantial evidence. Even though we have already reversed Lloyd's felony theft conviction, we shall address this issue because granting relief on it would also necessitate vacating Lloyd's robbery conviction.

At the brief suppression hearing that was held immediately before trial, the only testimony was given by Officer Taylor. Officer Jones, who initially stopped the vehicle in which Lloyd was found, was unavailable to testify.

On direct examination, Officer Taylor testified that the description given by dispatch of the vehicle fleeing the drugstore robbery was a small vehicle, possibly a Toyota or Nissan.[27] Officer Taylor agreed with the Commonwealth's assertion that the description given by dispatch was of a "little foreign car." Officer Taylor then testified that Officer Jones, who stopped the car in question, stated on the police

radio that he was trying to catch a small car that was attempting to merge onto the interstate at a high rate of speed. Later during his testimony, Officer Taylor agreed with the Commonwealth when it stated that Officer Jones had related that the car was traveling 80–100 miles per hour.

When Officer Taylor arrived at the stop to assist Officer Jones, Officer Jones told Officer Taylor that he had asked the driver of the car for registration papers; and the driver had produced registration papers for a boat. Jones also told Taylor that the driver was "acting very nervous." The driver gave the officers permission to search the car, and during that search, the officers found Lloyd hiding in the trunk and holding a gun.

On cross-examination, Officer Taylor again testified that dispatch described the vehicle associated with the drugstore robbery as being a small foreign car, possibly a Toyota or Nissan. Officer Taylor testified that he believed the car in which Lloyd was found was a Honda. Officer Taylor testified further that he was not sure how Officer Jones had ascertained the speed of the vehicle in which Lloyd was found.

At the conclusion of Officer Taylor's testimony, the trial court denied the motion to suppress, finding that probable cause existed for the stop and the search was based upon consent. The case then proceeded to trial.

As we have recently stated:

26. The remedy for these types of double jeopardy violations is to vacate the conviction for the lesser offense. *Brown v. Commonwealth,* 297 S.W.3d 557, 562–63 (Ky.2009). Theft by unlawful taking under these facts is a Class D felony, KRS 514.030(2); robbery in the first degree is a Class B felony, KRS 515.020(2). Thus, we vacate the theft by unlawful taking conviction. *See McKee,* 720 S.W.2d at 344 (affirming robbery conviction and reversing theft by unlawful taking conviction with directions to dismiss the theft by unlawful taking charge).

27. From the parties' briefs, it is unclear how the authorities gained a description of the getaway vehicle. Presumably, a witness gave the description to the authorities; but the source of the description is irrelevant to the issues in this appeal.

Motions to suppress are governed by Kentucky Rules of Criminal Procedure (RCr) 9.78, which provides that a court presented with a motion to suppress "shall conduct an evidentiary hearing outside the presence of the jury and at the conclusion thereof shall enter into the record findings resolving the essential issues of fact raised by the motion or objection and necessary to support the ruling." Upon appellate review, [RCr 9.78 provides that] the trial court's findings of fact are "conclusive" if they are "supported by substantial evidence...." "Using those facts, the reviewing court then conducts a de novo review of the trial court's application of the law to those facts to determine whether the decision is correct as a matter of law."[28]

■ All warrantless searches are presumed unreasonable unless the search falls within an exception to the warrant requirement.[29] The officers in this case had no warrant. But consent is a well-recognized exception to the warrant requirement.[30] And Officer Taylor's testimony that the driver gave consent to search the vehicle was not rebutted, nor does Lloyd contend that the driver lacked authority to consent to the search of the vehicle. The propriety of the search, therefore, is not really at issue. More accurately, the issue is the antecedent question of whether the initial stop of the vehicle was proper.

■ It is well-settled that "an officer who has probable cause to believe a .... traffic violation has occurred may stop a vehicle regardless of [the officer's] subjective motivation in doing so."[31] It is also well-settled that hearsay testimony is generally permissible at a suppression hearing.[32] Actually, a pre-trial finding of probable cause may be based upon hearsay even though the hearsay may not be admissible in an actual trial.[33] So the fact that the testimony at the suppression hearing regarding the propriety of the initial stop of the vehicle was largely, if not entirely, based upon hearsay testimony of Officer Taylor is not automatic grounds for granting the motion to suppress.

Officer Taylor testified that Officer Jones had radioed that he was going to stop the car because it was going at a high rate of speed—80 to 100 miles per hour. Although cross-examination of Officer Taylor showed that he did not know Officer Jones's basis for determining the speed of the vehicle, Lloyd offered no evidence to

28. *McCloud v. Commonwealth*, 286 S.W.3d 780, 784 (Ky.2009), *quoting Commonwealth v. Jones*, 217 S.W.3d 190, 193 (Ky.2006) (internal footnote omitted).

29. *Jones*, 217 S.W.3d at 195.

30. *Id.* at 198.

31. *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky.2001).

Lloyd's brief contains an extended discussion of an apparent controversy in federal courts about whether a reasonable suspicion or probable cause standard should be used in determining the propriety of a stop based on a traffic violation. As may be gleaned from the quote from *Wilson*, we use the probable cause standard in these situations. We need not distract our focus from the issue before us by enmeshing ourselves into the federal courts' apparent debate over which standard should be used, however, because Lloyd is not entitled to relief under either standard.

32. *Kotila v. Commonwealth*, 114 S.W.3d 226, 235 (Ky.2003), *overruled on other grounds by Matheney v. Commonwealth*, 191 S.W.3d 599, 603 (Ky.2006).

33. *See, e.g., Greene v. Commonwealth*, 244 S.W.3d 128, 134 (Ky.App.2008) (noting in course of determining at suppression hearing whether arrest was supported by probable cause that "[a] finding of probable cause may be based upon evidence, such as hearsay, which would be inadmissible at trial.").

rebut Officer Jones's observation that the vehicle was traveling at a high rate of speed. Since a speed of eighty miles per hour, the minimum speed mentioned by Officer Jones, is above the maximum permitted speed on an interstate in Kentucky,[34] then Officer Jones clearly had probable cause to initiate a traffic stop of the vehicle in which Lloyd was hiding.

The fact that Officer Jones may have also wanted to stop the vehicle because it matched the description of the getaway vehicle from the drugstore robbery is irrelevant at this time because, again, "an officer who has probable cause to believe a ... traffic violation has occurred may stop a vehicle *regardless of [the officer's] subjective motivation in doing so.*"[35] So Lloyd's argument that the description of the getaway vehicle as a Toyota or Nissan rendered improper the stop of this Honda vehicle is without merit.

In summary, we find no error in the trial court's denial of the motion to suppress.

### III. CONCLUSION.

For the foregoing reasons, the judgment of the circuit court is affirmed as to Lloyd's robbery conviction and reversed as to Lloyd's theft by unlawful taking conviction; and the case is remanded to the trial court with instructions to dismiss the theft by unlawful taking charge and for the entry of a new final judgment.

All sitting. ABRAMSON, NOBLE, SCHRODER, SCOTT, and VENTERS, JJ., concur. CUNNINGHAM, J., concurs by separate opinion.

---

**34.** *See* KRS 189.390 (stating maximum permissible speed of sixty-five or seventy miles per hour, depending on the location, for interstate highways in Kentucky).

CUNNINGHAM, J., concurring:

I fully concur with the opinion of the Chief Justice. I add to emphasize a point that supports the decision of the majority. Theft by unlawful taking is a lesser-included offense of robbery. *Roark v. Commonwealth*, 90 S.W.3d 24, 38 (Ky.2002). Common sense, therefore, should dictate that one cannot be convicted of both. However, while a person cannot be charged and convicted of both, one may still be convicted for the theft as a lesser included, although the jury may find the defendant not guilty of robbery.

---

**35.** *Wilson,* 37 S.W.3d at 749. (Emphasis added).