# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 19, 2015
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2013-SC-000813-MR

FINAL

DATE 3-12-15 [signature]

STEVEN COLE GOODMAN          APPELLANT

|  |  |
|---|---|
| V. | ON APPEAL FROM HARDIN CIRCUIT COURT<br>HONORABLE KEN HOWARD, JUDGE<br>NO. 12-CR-00626 |

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART, VACATING IN PART AND REMANDING

A jury found Steven Cole Goodman (Goodman) guilty of two counts of first-degree robbery; four counts of wanton endangerment; one count each of first-degree assault, first-degree burglary, theft by unlawful taking of a firearm, and theft by unlawful taking of more than $500; and of being a persistent felony offender in the second degree. Goodman's convictions arose from a series of events that began at Carolyn's Corner, a liquor/convenience store, and continued to the homes of store employee Jason Matz (Matz) and his neighbor, Gilbert Board (Board). Goodman argues on appeal that his convictions of first-degree robbery, first-degree assault, and theft as to Matz and his convictions of first-degree robbery and theft as to Board violated his right to be free from being placed in jeopardy twice for the same crime. Goodman also argues that the trial court erred by not granting his motion to

suppress the out-of-court identification by the owner of Carolyn's Corner, Carolyn Edelen (Edelen). Having reviewed the record and the arguments of the parties, we affirm in part and vacate in part and remand.

## I. BACKGROUND

Carolyn's Corner opens on Saturdays at 8:00 a.m. On Saturday October 27, 2012, Edelen arrived at Carolyn's Corner at approximately 5:30 a.m. to prepare the store for opening. A man who Edelen later identified as Goodman entered the store at approximately 6:30 a.m. Edelen told him the store was closed, and he said that he just wanted to use the telephone. Edelen told Goodman she did not have her phone but that her husband would be there soon, and he might let Goodman make a call. Goodman left the store but stayed on the porch. When Edelen went to lock the door, Goodman pushed his way back into the store. He told Edelen he had a gun and would shoot her if she did not give him her car keys. Edelen grabbed a plastic liquor bottle and swung it at Goodman and told him to leave. Goodman then grabbed a glass liquor bottle, grabbed Edelen, and the two struggled. Eventually, the two went out the front door of the store, and Goodman searched Edelen's car in a vain attempt to find her keys.

In an attempt to get help, Edelen lied to Goodman and told him that she lived in Matz's house, which is across the street from the store. Believing that Edelen would get him money from the house, Goodman took her across the street to Matz's house. Edelen knocked loudly on Matz's door, which alarmed Matz, so he got his handgun before going to the door. When Matz opened the

door, Goodman pushed his way into the house and the two struggled for control of Matz's gun. During the struggle Goodman shot Matz once in the chest and once in the elbow; however, neither wound was fatal.

After shooting Matz, Goodman took Matz's gun, left his house, and went to Board's house, which was one lot away from Matz's. Goodman rang Board's doorbell and, when Board responded, Goodman pulled the door open and threatened to shoot and kill Board if he did not give Goodman his car keys. Board gave Goodman the keys, and Goodman drove away in Board's car.

After receiving a tip, the police found Board's car parked in the woods near a trailer owned by Tedra Underwood. Based on information they received from Underwood and her boyfriend, Eddie Sutton, the police arrested Goodman the afternoon of October 29, 2012. Later that evening, Edelen went to the police station where she identified Goodman as the person who had attacked her.

As a result of his actions on October 27, Goodman was indicted and ultimately convicted of the above-listed crimes. We set forth additional facts as necessary below.

## II. STANDARD OF REVIEW

The issues raised by Goodman on appeal require different standards of review. Therefore, we set forth appropriate standard in our analysis of each issue.

3

# III. ANALYSIS

## 1. Double Jeopardy.

Goodman was convicted of three crimes related to Matz that are at issue – theft by unlawful taking, first-degree robbery, and first-degree assault. He was convicted of two crimes related to Board that are at issue – theft by unlawful taking and first-degree robbery. Goodman argues that his conviction of the robbery of Matz precluded his convictions of theft and assault related to Matz. Similarly, he argues that his conviction of the robbery of Board precluded his conviction of theft related to Board.

The double jeopardy clauses of the United States and Kentucky constitutions provide that a person may not be placed in jeopardy twice for the same crime. *See* U.S. Const. amend. V.; Ky. Const. § 13. We review issues related to violations of the double jeopardy clauses *de novo*. *See Watkins v. Kassulke*, 90 F.3d 138, 141 (6th Cir. 1996).

### a. Goodman's Convictions of First-Degree Robbery and Theft by Unlawful Taking as to Matz Violated Goodman's Right to Be Free From Being Placed in Double Jeopardy.

As noted above, Edelen convinced Goodman to go to Matz's house by stating that it was her house, and she could get money for Goodman. When they got to Matz's house, Matz and Goodman struggled for control of Matz's gun, Matz was shot twice, and Goodman took Matz's gun. During the course of the struggle, Goodman told Edelen that he would kill Matz if she did not give him money and her car keys. Based on this evidence, the court instructed the jurors to find Goodman guilty of first-degree robbery if they believed that

4

Goodman, while armed with a handgun, attempted to steal cash or a vehicle from Matz by the use or threatened use of physical force. The court also instructed the jurors to find Goodman guilty of theft by unlawful taking if they believed he took Matz's handgun, knowing it was not his own, with the intent to deprive Matz of the gun. The jurors found Goodman guilty under both instructions.

Goodman argues that his conviction of theft related to Matz must be reversed because the robbery and theft convictions arose from the same act and thus violate the double jeopardy clauses. The Commonwealth, albeit with a little reluctance, concedes that Goodman is correct.

We have previously held that "[i]n order to determine whether a person may properly be subjected to prosecution for multiple offenses based upon one act, courts use two main guideposts—the *Blockburger*[1] test and the expressed intent of the legislature." *Lloyd v. Com.*, 324 S.W.3d 384, 387 (Ky. 2010) (footnote added). In *Lloyd*, we held that, under the *Blockburger* test, robbery and theft would be two separate offenses because robbery requires the proof of elements that theft does not, *i.e.* the perpetrator of robbery must threaten to use or use force and be armed with a deadly weapon or dangerous instrument. *Id.* at 388. However, we also held that, when both theft and robbery arise from the same act, the legislature expressly intended "for theft by unlawful taking to be subsumed into robbery." *Id.* at 390. Therefore, a defendant cannot be convicted of both crimes if they arise from the same act.

---

[1] *Blockburger v. United States*, 284 U.S. 299 (1932).

5

Here, Goodman's robbery and theft by unlawful taking convictions as to Matz arose from the same act; therefore, we agree that the convictions violated the double jeopardy clauses. As noted by the Commonwealth, in such situations the remedy is to vacate the conviction for the lesser offense. *Kiper v. Com.*, 399 S.W.3d 736, 746 (Ky. 2012), *as modified on denial of reh'g* (Apr. 25, 2013). In this case, theft by unlawful taking is the lesser offense; therefore, Goodman's conviction for theft by unlawful taking as to Matz is vacated.

### b. Goodman's Convictions of First-Degree Robbery and Theft by Unlawful Taking as to Board Violated the Prohibition Against Placing Goodman in Jeopardy Twice for the Same Crime.

The jury convicted Goodman of two crimes related to Board – first degree robbery for the theft of Board's car keys and theft by unlawful taking for the theft of Board's car. The Commonwealth, with little reluctance, concedes that the two convictions, which arose from the same offense, violate the prohibition against double jeopardy. For the reasons set forth above, we agree. Therefore, Goodman's conviction for theft by unlawful taking as to Board is vacated.

### c. Goodman's Convictions of First-Degree Robbery and First-Degree Assault as to Matz Did Not Violate the Prohibition Against Placing Goodman in Jeopardy Twice for the Same Crime.

As previously noted, Goodman and Matz struggled for control of Matz's gun, Goodman shot twice, and Goodman took Matz's gun. The court instructed the jury on both first-degree robbery and first-degree assault. As noted above, there are two guideposts for determining if conviction of two crimes arising from one act violates the double jeopardy prohibition - the *Blockburger* test and the express intent of the legislature.

6

Under *Blockburger,* the question is whether the statutory provisions of each offense require proof of a different fact or different facts. *Lloyd* 324 S.W.3d at 387. A person is guilty of first-degree robbery when

> in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:
>
> (a) Causes physical injury to any person who is not a participant in the crime; or
>
> (b) Is armed with a deadly weapon; or
>
> (c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

Kentucky Revised Statute (KRS) 515.020.

> A person is guilty of first-degree assault when
>
> a) He intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument;
>
> or
>
> (b) Under circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person.

KRS 508.010.

First-degree robbery requires a person to use or threaten the use of physical force with the intent to commit a theft. Simultaneously, the person must cause physical injury, or be armed with a deadly weapon, or use or threaten to use a dangerous instrument. First-degree assault requires a person to intentionally cause serious physical injury by using a deadly weapon or dangerous instrument. In the alternative, it requires the person to manifest

7

extreme indifference to human life and to wantonly engage in conduct that causes serious physical injury. First-degree robbery requires proof of a theft, first-degree assault does not. First-degree assault requires proof of a serious physical injury, first-degree robbery does not necessarily require proof of any injury. Therefore, under *Blockburger*, the two statutes require proof of different facts and conviction of both offenses does not violate the prohibition against double jeopardy.

However, as in *Lloyd*, our analysis must also include a determination if the legislature intended for assault to be subsumed into robbery. Having reviewed the statutes and relevant case law, we hold that it did not for three reasons.

First, in *Lloyd*, we held that theft is subsumed into robbery in large part because both statutes require a finding that a theft occurred. In other words, the legislature devised the statutes so that theft is a prerequisite to both offenses. There is no such similar prerequisite for conviction of robbery and assault. A person can commit a robbery without injuring someone but cannot commit assault without doing so. Furthermore, a person can commit assault without stealing something but cannot commit robbery without doing so. Thus, the robbery and assault statutes lack the overlapping prerequisite found in the robbery and theft statutes.

Second, as we noted in *Lloyd*, the commentary to the first-degree robbery statute specifically states that "all of the elements of the crime of theft as set forth in KRS 514.030 are incorporated into" first-degree robbery. 324 S.W.3d

8

at 390. No such incorporating language for KRS 508.010, the first-degree assault statute, is contained in the commentary to KRS 515.020, the first-degree robbery statute.[2] Therefore, the statutes do not show an express legislative intent for assault to be subsumed by robbery.

Third, the instruction for first-degree robbery stated the jurors had to believe that, in the course of a theft, Goodman "used or threatened the immediate use of physical force upon Jason Matz." It did not say the jurors had to believe that Goodman caused injury to Matz. The instruction for first-degree assault stated that the jurors had to believe Goodman caused serious physical injury to Matz. It did not say the jurors had to believe that Goodman committed a theft. In *Fields v. Commonwealth*, 219 S.W.3d 742, 746 (Ky. 2007), we held that similar instructions and resultant convictions did not violate the double jeopardy clause. We see no reason to alter that opinion. Therefore, we affirm Goodman's convictions of first-degree robbery and first-degree assault as to Matz.

Finally, we note that Goodman relies in large part on *Commonwealth v. Varney*, 690 S.W.2d 758, 759 (Ky. 1985), wherein we held that assault is a lesser included offense of robbery and a defendant cannot be convicted of both crimes arising from the same act. However, as the Commonwealth notes, *Varney* relies in large part on our holding in *Sherley v. Commonwealth*, 558

---

[2] The commentary at the beginning of KRS Chapter 515 does state that "[r]obbery is a combination of two other crimes (theft and assault). . . ." However, the commentary to KRS 515.020 only states that "all of the elements of the crime of theft . . . are incorporated into" first-degree robbery. It does not state that all of the elements of assault are incorporated.

S.W.2d 615 (Ky. 1977), a case we have since declared to be "an aberration in our double jeopardy decisional law." *Dixon v. Commonwealth*, 263 S.W.3d 583, 589 (Ky. 2008). Therefore, *Varney* is of no persuasive or precedential value.

## 2. The Trial Court's Denial of Goodman's Motion to Suppress Edelen's Identification Was Not Error.

The police arrested Goodman the afternoon of October 29, 2012. Later that day, Kentucky State Police Detective Jonathan Vaughn contacted Edelen, told her that the police had a suspect in custody, and asked her to come to the police station to see if the suspect was the person who had attacked her. At the police station, Edelen watched via closed circuit television as an officer and Goodman spoke in an interrogation room. Edelen then identified Goodman as the man who had attacked her and Matz.

Prior to trial, Goodman filed a motion to suppress Edelen's identification arguing that it was fatally tainted because it was made under highly suggestive and unreliable circumstances. Following an evidentiary hearing, the court denied Goodman's motion. On appeal, Goodman argues that the trial court erred by not suppressing Edelen's identification.

> Appellate review of a trial court order on a suppression motion involves a two-step analysis. First, the factual findings of the trial court are conclusive if supported by substantial evidence. Second, if the findings are supported by substantial evidence, the appellate court conducts a de novo review to determine whether the trial court's ruling is correct as a matter of law.

*Anderson v. Commonwealth*, 352 S.W.3d 577, 583 (Ky. 2011)(internal citations omitted).

10

In its on-the-record ruling, the trial court first found that the single-person showup identification Edelen made was "inherently suggestive." *See Rodriguez v. Commonwealth*, 107 S.W.3d 215, 218 (Ky. 2003). Based on that finding, the court then undertook an analysis of the totality of circumstances surrounding Edelen's identification to determine the likelihood those circumstances led to an "'irreparable misidentification' by the witness." *Id.*

In assessing the totality of the circumstances, a trial court must consider the following five factors:

> (1) [T]he opportunity of the witness to view the criminal at the time of the crime[;] (2) the witness's degree of attention[;] (3) the accuracy of the witness's prior description of the criminal[;] (4) the level of certainty demonstrated by the witness at the confrontation[;] and (5) the length of time between the crime and the confrontation.

*Id.* The trial court addressed each of those factors in its order, finding that there was not a likelihood that Edelen had irreparably misidentified Goodman as a result of the single person showup. We agree.

As to the first factor, Edelen testified it was dark outside when Goodman entered the store, and she had not turned on the overhead lights. However, she testified a Pepsi machine and a light she had on behind the counter provided sufficient light for her to see Goodman clearly. Furthermore, she testified Goodman made no attempt to hide or obscure his face; he walked up to her when he asked to use the phone; the two were less than three feet apart when they struggled in the store; there was a security light on outside the building; and she could see Goodman's face when he was ransacking her car.

11

The trial court found that, based on the preceding facts, Edelen had sufficient opportunity to view Goodman. We discern no error in the trial court's finding, thus, this factor weighs in favor of the Commonwealth.

As to the second factor, Edelen testified that she was afraid; however, she made several attempts to get Goodman outside the store so she could lock the door. When those attempts failed, she devised a plan to get Goodman to Matz's house where she believed she could get help. The trial court found this evidence indicated that, despite her fear, Edelen's attention was sufficiently focused to enable her to identify Goodman. Goodman argues this finding by the trial court was not supported by the evidence because Edelen did not testify directly about her degree of attention. We disagree.

There need not be direct testimony about a victim's degree of attention because "attention during traumatic experience is presumed to be acute." *Rodriguez v. Commonwealth*, 107 S.W.3d 215, 218 (Ky. 2003) *citing to Levasseur v. Pepe*, 70 F.3d 187, 195 (1st Cir.1995). Furthermore, the trial court's inference that Edelen's ability to devise plans to extricate herself from the situation indicated she was able to focus her attention despite her fear is logical and supported by the evidence. Thus, this factor weighs in favor of the Commonwealth.

As to the third factor, Detective Vaughn testified that when he interviewed Edelen after the fact, she gave a "pretty good description," of Goodman and what he was wearing. Detective Vaughn did not set forth any details of Edelen's description, stating that he would need to review his notes to

12

do so; however, neither the Commonwealth nor Goodman asked Detective Vaughn to review those notes. Detective Vaughn also testified that he had reviewed security video, but, due to the quality of the video, he was unable to identify Goodman. However, he testified that the person in the video was wearing dark jeans with a pattern on the back.

Edelen testified that the perpetrator was slightly taller than she is, weighed approximately 150 pounds, and wore jeans with a white mark or spot on the back, a black pullover sweatshirt, and a gray toboggan.[3] She reviewed photographs of a toboggan recovered from Matz's house and jeans taken from Goodman's house and identified those as what Goodman was wearing. The trial court noted that this testimony was consistent but failed to delineate with what it was consistent. Goodman now argues that this alleged failing by the trial court is fatal to its order denying the motion to suppress. We disagree for three reasons.

First, Goodman did not ask Detective Vaughn to review his notes or otherwise attempt to get a better delineation of the description Edelen made the morning of the crime. Furthermore, he did not ask the court to make any additional findings regarding this factor. Second, Edelen's description of Goodman's jeans was consistent with the jeans in the photograph and with Detective Vaughn's description from the video tape. Finally, this factor is but one of five and is not necessarily dispositive. At worst, the trial court's failure

---

[3] A toboggan can refer to a sled or to a knit cap. In this case, it refers to a knit cap.

13

to determine explicitly whether Edelen's description the day of the crime was consistent with her testimony during the hearing may weigh in favor of Goodman; however, it does not, as a matter of law, outweigh the other factors.

As to the fourth factor, Edelen testified she would never forget the perpetrator's face, and she knew as soon as she saw him, without a doubt, that Goodman was the perpetrator. Goodman appears to be arguing that the fact Detective Vaughn asked Edelen to come to the police station to look at a suspect negates Edelen's testimony. We disagree.

The trial court was free to believe Edelen, which it did. Furthermore, Edelen's testimony was bolstered by Detective Vaughn's testimony that, when Edelen saw Goodman, she became upset and began shaking. Therefore, this factor weighs in favor of the Commonwealth.

The final factor, the time between the crime and the in-person identification was approximately 48 hours. Goodman correctly makes no argument that this factor should weigh in his favor.

In summary, four of the five reliability factors weigh in favor of the Commonwealth. While the fifth factor may weigh in favor of Goodman, it does not, as a matter of law, outweigh the other four. Therefore, we discern no error in the trial court's denial of Goodman's motion to suppress Edelen's identification.

## IV. CONCLUSION

For the foregoing reasons Goodman's convictions for theft by unlawful taking as to Matz and Board are vacated and this matter is remanded to the

14

trial court for entry of a consistent judgment. Goodman's remaining convictions are affirmed. Because Goodman was sentenced to thirty years' imprisonment for the robbery convictions and the sentences for his other convictions were ordered to run concurrently therewith for a total of thirty years' imprisonment, Goodman's sentence will remain unchanged.

Minton, C.J.; Abramson, Cunningham, Keller, Noble and Venters, JJ., sitting. All concur.


COUNSEL FOR APPELLANT:

Linda Roberts Horsman
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

James Daryl Havey
Assistant Attorney General